THE CITY OF CHICAGO, Relator, *v.* GEORGE W. COLBY, Respondent.

### APPLICATION FOR A MANDAMUS.

The second section of the act entitled "An Act to amend the charters of the several towns and cities in this State," approved March 1st, 1854, repeals so much of the act of 1851, as empowered the common council of the city of Chicago to order a sale of real estate to enforce the payment of assessments.

Special assessments and taxes are different, and the same rule of construction where the words are used in statutes, will not be indiscriminately applied to these terms.

The language used in the case of the *City of Chicago* v. *The Rock Island Railroad Company*, *ante*, page 286, qualified and explained.

The act of February 14th, 1857, amendatory of the city charter of Chicago, repeals the second section of the act approved March 1st, 1854, aforesaid.

The Cook County Court of Common Pleas and the Circuit Court have jurisdiction to render judgments for taxes and assessments; but the County Court, unless extraordinary powers have been conferred upon it, has not.

THE grounds of this application for a mandamus, are stated at length in the opinion of the court.

SCATES, MCALLISTER & JEWETT, for Applicant.

E. ANTHONY, for Respondent.

WALKER, J. The petition for mandamus in this case alleges, that on the 5th day of October, 1855, the common council of the city of Chicago ordered that a survey be made, and notice

given, that the city intended to proceed to take so much land as would be necessary for the extension of La Salle street from its terminus on Madison street on a straight line through blocks 95, 96, 97, 116, 117, and 118, to Jackson street. And that the city surveyor proceeded forthwith to survey, mark out, plat and record in a book which had been provided for that purpose, the improvement and real estate required to be taken for that purpose. That due notice of the intended proceeding was given in the corporation newspaper, published in the city of Chicago, on the 20th day of October, 1855, for ten consecutive days. That afterwards, on the 12th day of November, 1855, and the 10th day of January, 1856, by an order of the common council, three reputable, ·discreet and disinterested freeholders of the city were duly elected by ballot, as commissioners to ascertain the damages and compensation due the owners respectively of such real estate as should be taken and appropriated for the opening La Salle street from Madison to Jackson street, in accordance with the survey, and to assess the amount, with the costs upon the real estate benefited by the improvement, as nearly as might be, in proportion to the benefits resulting to each parcel of ground. That the commissioners were qualified on the 16th day of January, 1856, and gave notice by advertisement in the corporation newspaper, that they would, on the 24th day of January, 1856, meet at the supervisors' room in the court-house in Chicago, at 10 o'clock, A. M., for the purpose of hearing testimony, and of examining into the damages and benefits resulting from such improvement. That the common council, on the application of the commissioners, on the 18th day of February, 1856, extended the time for them to report, for forty days, and afterwards, on the 24th day of March, 1856, further extended the time to report, fifteen days. That they made and returned the assessment roll of all lots or real estate damaged or taken, and all the lots and real estate deemed benefited by the improvement, to the common council, and the same was filed in the city clerk's office on the 5th day of April, 1856. That the common council caused due notice of the assessment to be given by advertisement in the public newspapers of the corporation for ten days, that all persons interested might be and appear on the 21st day of April, 1856, before the common council, and make objections thereto, and that the common council would then and there revise and confirm the assessment roll; that on that day the common council did revise the same, and on the 9th day of June following, confirmed the assessment in every, particular, and ordered that a warrant issue for its collection; that a warrant issued, directed to the city collector of assessments for the south division of Chicago for the years 1856 and 1857,

which bears date the 17th day of June, 1856, and was under the hand of the Mayor and the seal of the city. That George W. Colby was duly elected city collector of special assessments for the south division of the city of Chicago for the years 1856 and 1857, and qualified as such, and entered upon the duties of his office, and was, when the warrant issued, qualified and acting as such collector; that the warrant was delivered to him to execute, and that he entered upon the collection of the warrant and collected divers sums of money of the owners of the lots so assessed, amounting to $23,913.03; and that he was unable to collect the remainder of the assessment, and on the 21st day of July, 1856, made return of the warrant that he had demanded payment of the several owners of the lots so assessed, and that they had not paid the same, and that he had not been able to find personal property subject to the payment thereof, and unsatisfied as to all of the assessments not marked "paid." And that the common council then made an order of sale of the several lots, and parts of lots, and tracts of land, so assessed, for the amount assessed severally and unpaid on each, and that the warrant was redelivered to Colby, commanding him to sell the several tracts, lots, and parts of lots, for the collection of such unpaid assessments. That he advertised the lots, tracts, and parts of lots for sale for the assessments; that before the day fixed for the sale of the same under the order, to wit, the 6th day of September, 1856, the Board of Supervisors of Cook county sued out of the Cook County Court of Common Pleas a writ of injunction against the city of Chicago and Colby, restraining them from further proceeding to sell the real estate assessed to Cook county as block ninety-nine, being the court-house or public square, and they were further restrained by a writ of injunction issued from the same court, bearing date on the 29th day of January, 1857, at the suit of Volney E. Roscoe, from selling lots 3, 4, 6, 7, and 8, in block 109, for such assessment, and that other injunctions were threatened by other owners, if the collector proceeded to make sale; and to avoid further expense, it was agreed, that no further sales should take place until these cases were determined, and that the other assessments should abide the event of these suits. That the injunctions in those cases have been dismissed; and that petitioner has applied to Colby to proceed and sell the property, and collect the assessments, but that he neglects and refuses to make sale under the order of the common council.

By agreement of the parties, Colby enters his appearance, and waives the service of an alternative writ of mandamus, and makes return as if such a writ had issued and he had been duly served, and by his return he admits all of the material facts charged in

the petition, and agrees that if the court shall be of opinion that the facts warrant it, a peremptory mandamus may issue as though the return was to an alternative writ.

The question presented by this record is, whether Colby, who was the special collector of assessments, is authorized, under the order of sale made by the common council, to sell the land, lots and parts of lots, to satisfy the assessments severally due and unpaid, on this warrant. In determining this question it will be necessary to examine the provisions of several legislative enactments. By the provisions of the act of 1851, amendatory to the city charter, Chap. 8, Sec. 8, page 159, the authority is conferred upon the common council to direct the sale of real estate for the non-payment of taxes and assessments, by an order entered of record. Under this provision the common council had the right to make the order in this case, unless the provision of the act of 1851 was repealed by the act of the 1st of March, 1854; Scates' Stat. p. 201; the first section of which enacts, " That in all cases where taxes assessed on real estate by the corporate authorities of any city or town in this State, except in the city of Chicago, are not paid within the time fixed by the corporate authorities of any such city or town, it shall be lawful for the collector of any such city or town, after giving notice of such application, by advertisement, at least thirty days previously to such application, in some newspaper published in said town or city, or if no newspaper should be published in said town or city, then by posting up printed or written notices of such intended application in at least four of the most public places in such town or city, to apply to the County Court of the county in which such delinquent real estate may be situated, and cause judgment to be entered against such delinquent real estate for the amount of taxes due and unpaid, and costs," etc. And it further provides, that when the County Court shall render judgment, it shall issue its precept or order to the collector of such city or town, directing him to sell said real estate at public auction, etc. By the second section it is provided, that " In all cases where assessments have heretofore been made, or where assessments may hereafter be made, by the corporate authorities of any town or city, in this State, on any lot or real estate in such town or city, for the purpose of improving any street, side-walk or alley in front of such lot or real estate, or for any purpose whatever, either by ordinance, resolution or other proceeding, and such assessment is not paid within the time fixed by the order, resolution or ordinance making such assessment, the corporate authorities of the several towns and cities in this State, may apply to the County Court of the proper county for judgment against said lot or real estate for the

40

amount of said assessment and costs; and the County Court, on such application being made, shall render judgment against such lot or real estate for the amount of said assessment and costs, and shall issue its precept to the sheriff of the proper county, commanding him to sell said lot or real estate, or so much thereof as may be necessary to pay said judgment and costs, in the same manner and with like effect as if sold upon execution at law," etc.

This latter act in no way affects the power of the common council to order the sale of real estate for the collection of taxes.  The first section relates to taxes alone, and excepts the city of Chicago from its provisions, while the exception in terms is omitted in the second section.  It was urged that by implication the exception extends to the second section also, as the same reason and necessity existed for its exception in the one as in the other.  If the second section was in relation to the same subject matter, and only made some further provision in regard to it, the position would doubtless be correct.  But the first section relates alone to taxes, while the second refers to assessments for the improvement of streets, sidewalks and alleys.  This court has held that a special assessment is not a tax.  *Canal Trustees* v. *The City of Chicago*, 12 Ill. R. 406. And the same distinction is again recognized in the case of *Higgins* v. *The City of Chicago*, 18 Ill. R. 281.  Then if a tax and a special assessment are different things, no rule of construction would authorize us to hold that the same exception was intended to apply to the second section, that is expressed in the first, but on the contrary the fact that the city of Chicago is expressly excepted from the provisions relating to taxes, and is not referred to in the provision relating to assessments, raises a strong presumption that it was not intended to be excepted in the second section.  The language employed in the second section is, likewise, comprehensive, in terms embracing all cities and towns in the State, and we think, in the absence of such an exception, the city of Chicago must be held to be embraced in its provisions.  It then follows that the second section of the act of March 1st, 1854, repeals so much of the act of 1851, as empowered the common council to order a sale of real estate to enforce the payment of assessments; and any order for such purpose, made by them after the act of March, 1854, went into operation, would be unwarranted and inoperative.

The language used by this court, in the case of *The City of Chicago* v. *The Rock Island Railroad Company*, *ante*, p. 286, is too broad, and should have been limited to all orders of sale made by the common council prior to the time the latter act took effect.  The language employed on that occasion was,

" That the act of 1851 was in force when the assessment was made and confirmed, and when the warrant was issued, and for several months after its return day.   Colby, under that act had the undoubted right to return this warrant and procure an order of sale from the common council at any time before the passage of the act of February, 1857." That decision was made without any reference to the act of March, 1854, the statement appearing from the facts of that case that the warrant had not been returned, and it did not appear that the common council had ever granted an order for the sale of this real estate, while these facts do appear in the present application.   That decision should be limited in so far as it holds that the common council had power to order a sale, or the collector to sell the property under such an order, after the adoption of the act of March, 1854, and so far as it holds the act of 1857 in force after the adoption of the former named act.

The question is then presented whether the act of March 1st, 1854, was repealed by the act amendatory of the city charter of Chicago, approved 14th February, 1857.   By section 27 of that act, Scates' Stat. p. 892, it is provided that there shall be no special collectors of revenue and assessments appointed by the common council, other than assistants to the city collector, who shall in all cases be the principal in the treasury department.

The 40th section, ib. p. 902, provides that, " If from any cause the taxes or assessments charged in said assessment warrants are not collected or paid on lands or lots described in said warrants on or before the first Tuesday in January ensuing the date of said warrants, it shall be the duty of the collector to prepare and make report thereof to some court of general jurisdiction to be held in the city of Chicago, at any special vacation or general term thereof, for judgment against the lands, lots or parcels of land, for the amount of taxes, assessments, interest and costs respectively due thereon.   And he shall give ten days' notice of his intended application, before the first day of the said term of the said court, briefly specifying the nature of the respective warrants upon which such application is to be made, and requesting all persons interested therein to attend at such time ; and the advertisement so published shall be deemed and taken to be sufficient and legal notice, both of the aforesaid intended application by the collector to said court for judgment, and a refusal and demand to pay the said taxes and assessments."

The 87th section, ib. p. 911, repeals all parts of the act of which it is amendatory, and the several acts amending the city charter as are inconsistent with, or are repugnant to, its pro-

visions, but provides that all acts and parts of acts not inconsistent with its provisions shall remain in full force.

Then is the second section of the act of March, 1854, inconsistent with the provisions of the act of February, 1857, as regards the mode of collecting these assessments? The former act requires the corporate authorities to make application for an order of sale, and that such application should be made to the County Court, and the order should be applied for after the time limited by such city or town, for the payment of such assessment, had expired; and that the precept should issue to the sheriff, to be executed in the same manner as executions at law: while by the provisions of the latter act, the collector is authorized to apply for a judgment, and his application must be made to a court of general jurisdiction, to be held in the city of Chicago; and he can only apply for an order of sale for the assessments that remain due and unpaid on the first Tuesday in January ensuing the date of the warrant; and it also requires the process for the sale of the property to issue to the collector. Thus it is seen that the provisions of these enactments are clearly inconsistent and repugnant, as to the time when the application shall be made, the court that shall order the sale of the property, and the person who shall enforce the order of sale; consequently the act of February, 1857, repeals that of March, 1854, so far as it relates to the city of Chicago.

We held in the case of the *City of Chicago* v. *The Rock Island Railroad Company,* that the city collector was alone authorized, under the act of February, 1857, to apply for an order for the sale of real estate to enforce the payment of assessments. We do not perceive any reason to be dissatisfied with that decision, and are disposed to adhere to that construction. That act requires the collector to apply to a court of general jurisdiction in the city of Chicago for an order of sale. That the Circuit Court of Cook county is such a court, none will doubt, and we have held that the Cook County Court of Common Pleas is such, and we have no doubt either of these courts have jurisdiction to render judgment for taxes and assessments. But the County Courts of this State, as they are generally organized, are not courts of general jurisdiction, and unless by the organization of the Cook County Court, it has such general jurisdiction, it could not order the sale of property for the non-payment of taxes and assessments under the act of 1857; and we have been referred to no law conferring general jurisdiction on that court.

The application for a peremptory mandamus is denied.

*Writ of mandamus refused.*