## PALMER v. STUMPH.

MUNICIPAL CORPORATION.—STREETS.—The *National* road, within the city of *Indianapolis*, is a street of the city.

SAME.—INJUNCTION.—ESTOPPEL.—By the proviso in section 68 of the act for the incorporation of cities, (Acts Spec. Sess. 1865, p. 32) if the owner of property fronting on a street of a city, for the improvement of which the common council has made a contract, denies the power of the council to order the improvement, he must test the question by injunction before the work is done; if he does not do so, but acquiesces in the action of the council, he is estopped from going behind the making of the contract.

SAME.—REPEAL.—REMEDY.—The repeal of the law under which the contract

for a street improvement is made, after the work has been done and the precept ordering the sale of the property issued, does not take away the remedy of the contractor. His claim is merged in what is equivalent to a judgment and execution levied upon the property, and is a vested right which the legislature cannot take away from him; but if this were not the case, the rights of the contractor are saved by section 90 of the act for the incorporation of cities, (Acts Spec. Sess. 1865, p. 39) which contains the repealing clause.

SAME.—ASSESSMENTS FOR STREET IMPROVEMENTS.—The mode of estimating the cost of improving the streets and alleys of a city, and creating a liability therefor, and the extent of such liability, as established in section 66 of the act for the incorporation of cities, (Acts Spec. Sess. 1865, p. 30) is constitutional and valid.

SAME.—TAXATION.—The decision in *Bright* v. *McCullough*, 27 Ind. 223, that the constitutional requirement in sec. 1, art. 10, of the constitution is fulfilled when the rate of assessment of taxation is uniform and equal throughout the locality where it is imposed, approved.

SAME.—LOCAL LAW.—The decision in *Goodrich* v. *Winchester, &c., Turnpike Co.*, 26 Ind 119, that a law which is general in its provisions, and open to all the citizens of the State to avail themselves of its benefits, is not a local or special law, within the meaning of the constitution, approved.

APPEAL from the *Marion* Common Pleas.

RAY, J.—These proceedings were had upon a transcript of certain orders of the common council of the city of *Indianapolis*, and the entries of the clerk of said city, concerning a street improvement, and the steps taken to enforce the collection of the assessment made upon the property of the appellant, in favor of the appellee, the contractor who did the work of grading and graveling the street. The transcript was brought into the Court of Common Pleas by appeal taken from the precept issued for the collection of the assessment, and after trial final judgment was rendered in favor of the appellee.

The first objection taken to the transcript of the proceedings before the common council is that it appears by the date stated, that the affidavit, upon the filing of which the precept is founded, was not filed until after the precept had been issued. By an examination of the transcript, it clearly appears by the recitals therein, that the date of the filing as stated is a clerical error, committed by the clerk of the city,

and which is corrected by the record itself. The entry is not made by the contractor, and therefore the strict rule of pleading applicable to a complaint should not be followed.

The next objection urged is that the transcript shows that the improvement was ordered by the council, and was made by the contractor, upon the *National Road,* within the limits of the city, and it is insisted that the highway is not included in the term, a street of the city. The same question is presented by answer in various forms.

The 68th section of the act for the incorporation of cities contains this provision: "Provided no question of fact shall be tried which may arise prior to the making of the contract." Acts Spec. Sess. 1865, p. 32. The same provision is contained in the subsequent act. The plain intent of the statute is, to prevent the owner of property, to be benefited by a contemplated improvement made by the common council of the street in front of his property, from remaining silent until he has secured the full benefit of the work, and then avoiding the payment therefor. If he denies the power of the council to order the improvement, he must test the question by injunction before the work is done. Acquiescence in the action of the council is by law made to estop him from going behind the making of the contract.

The records of the city disclosed that the work was ordered and the contract made under a claim that the part of the *National Road* upon which the improvement was to be made was one of the streets of the city. That was a matter of fact which the appellant can no longer question. *City of Indianapolis* v. *Imberry,* 17 Ind. 175; *Com. of Allen Co.* v. *Silvers,* 22 Ind. 491.

Again, it is insisted that the repeal of the law under which the contract was made, the work done, and the precept issued ordering the sale of the property, has left the appellee without remedy. As the claim of the contractor was already merged in what is equivalent to a judgment and execution levied upon the property, his vested right in the judgment would seem to be in little need of legislative

aid. His rights, indeed, under the contract, were vested, and the legislature could not deprive him of them.

But were it otherwise, they are fully saved by section 90 of the act which contains the repealing clause. Indeed, if his rights were not saved by the new act, the appellant has not pointed out by what law he presents his case on appeal to the Court of Common Pleas, after the repeal of the statute authorizing the appeal to be taken.

The next objection made is that the assessment is invalid because the section of the law authorizing this method of taxing property is unconstitutional and void, as being in conflict with the first section of article ten of the state constitution, which reads as follows : "The general assembly shall prescribe by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal."

The word "assessment" is thus defined by Bouvier: "Determining the value of a man's property or occupation for the purpose of levying a tax." It is very clear that this meaning cannot be given to the word as used in the first clause of the section, as "a uniform and equal rate" cannot be devised for "determining the value of a man's property or occupation;" and if such a rule were practicable, it could accomplish no more than is expressly required in the second clause of the section, "and shall prescribe such regulations as shall secure a just valuation for taxation of all property." The second definition given to the word is "determining the share of a tax to be paid by each individual." This meaning, however, would include all the other provisions of the section, as "a uniform and equal rate," determining the share of a tax to be paid by each individual, would involve "a just valuation for taxation of all property." Another meaning given to the word is, "laying a tax." But wherein would a uniform and equal rate of laying a tax differ from a uniform and equal rate of taxation?

To adopt either one of these definitions, would render the use of the word "assessments" tautological, as to the word following it, or as to the remainder of the section. But the rule in construing the statute requires that effect is to be given to every part, and we are not to suppose words have been used which were intended to import nothing. *Love-joy* v. *Robinson*, 8 Ind. 399; *Hutchen* v. *Niblo*, 4 Blackf. 148; *Stayton* v. *Hulings*, 7 Ind. 145; Black. on Tax Titles, § 36, p. 610; Sedg. on Stat. and Con. Law, 238.

In the construction of words used in a constitution, this rule should be observed with still more strictness, as far more care and consideration has been given to the language employed than are to be anticipated in the drafting of a statute.

The remaining meaning, given by BOUVIER, to the word "assessment," enables us to comply with this rule in the present case. He defines it, "adjusting the shares of a contribution by several towards a common beneficial object, according to the benefit received." The term is used in this latter sense in *New York*, distinguishing some kinds of local taxation, whereby a peculiar benefit arises to the parties, from general taxation. The same distinction is recognized between the words "taxation" and "assessment" by BURRILL.

That this distinction was, at the date of the drafting and adoption of the present constitution, recognized by the legislature of this State, is shown from laws then in force on our statute books. Thus, in an act granting the citizens of *Lawrenceburg* a city charter, approved *January* 20, 1846, (Local Laws 1846, p. 109) it is provided, in section 18, that "for the purposes of revenue the city council shall levy and collect a tax on all real property within said city, not exceeding one-half per cent. on its valuation." By section 36, it is enacted that "whenever the owners of lots, on any street, shall be desirous of making any improvement on the same, by grading, graveling, paving, curbing, or guttering, or any other improve-

ments," &c., "the expenses thereof shall be assessed and levied on all the lots fronting on said street, or section of street, equally per front foot for the distance such improvement may be made." So in the 26th section of the act for the incorporation of the town of *Peru*, approved *February* 14, 1848, it was provided that assessments should be made in the same manner for street improvements, and that the "assessment and levy, from the time of making the same, shall be and remain a lien upon said lot or lots until the amount so assessed and levied shall be fully paid and discharged." (Local laws 1848, p 10). The same distinction is observed in the act approved *January* 20, 1846, "to amend and reduce into one, the several acts relating to the corporation of the town of *Vevay*." Local Laws 1846, p. 337.

These are but instances of the recognition of a distinction long adopted and existing as a rule applicable to towns and cities at the date of the adoption of the present constitution. It seems to us, that if the rules for construing statutes did not compel us to regard the words "assessment" and "taxation," as used in this section of the constitution, as distinct in meaning, still the legislation preceding and existing at the date of the constitution, and consistently adhered to until the present time, would require us to recognize, as an existing fact, as applied to certain municipal corporations, for certain well defined purposes, such a distinction, and to regard it as adopted in our constitution.

This distinction between an assessment and a tax has been recognized and acted upon by other courts. The constitution of *Ohio*, section 2, article 12, requires that "laws shall be passed taxing all real and personal property according to its true value in money."

Another section of that constitution declares that "the general assembly shall provide for the organization of cities and incorporated villages by general laws." § 6, art. 13. The latter clause of the same section provides that the legislature "shall restrict their power of taxation and assessment so as

to prevent its abuse." Here the taxing power is, in express terms, limited by one section to a money valuation of property, and yet the subsequent section, requiring the general assembly to restrain towns and cities in their exercise of the power of taxation and assessment, has been held as a recognition of the existence of a power to assess upon property without regard to the standard of value. *Hill* v. *Higdon*, 5 Ohio St. 243. In our own constitution, the distinction is taken in the very language which limits the taxing power.

In the case of *Reeves* v. *The Treasurer of Wood County*, 8 Ohio St. 333, the Supreme Court of *Ohio*, in considering the constitution of that State, say: " Unless we admit that the framers of this constitution were guilty of nonsensical tautology, the use, in this section of the constitution, of both words, 'taxation' and 'assessment,' is, by necessary implication, a recognition of the distinction between them, and also of the existence of the power to authorize assessments; for a constitutional mandate upon a legislative body to restrict and provide against the abuse of a power, presupposes its existence."

I may say that, although such assessments are a species of taxes, and included within the term taxes, in its most general sense, yet there has been established, by the decisions of courts of high authority, a distinction between assessments and taxes proper; and that this distinction is by irresistable implication recognized by the present constitution. In the same opinion it is said: " Taxes are impositions for purposes of general revenue; assessments are 'special and local impositions upon property in the immediate vicinity' of an improvement for the public welfare, ' which are necessary to pay for the improvement, and laid with reference to the special benefit which such property derives from the expenditure.'"

The constitution of *New York* contains the same provision, requiring the legislature to restrain cities and towns in exercising the power of taxation and assessment, and in *The People* v. *The Mayor &c. of Brooklyn*, 4 Coms. 419, the

same construction was placed upon the language, although it was also held that no restraint upon the power of taxation was imposed by that constitution. This distinction is strikingly shown by the constitutional provisions of some of the other states, and the decisions under them:

*Missouri.* "All property subject to taxation in this state shall be taxed in proportion to its value." Article 13, section 19.

*Louisiana.* "Taxation shall be equal and uniform throughout the state. All property on which taxes may be levied in this state shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property shall be taxed higher than another species of property of equal value, on which taxes shall be levied." Article 123.

*Illinois.* "The general assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property; such value to be ascertained by some person or persons to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." Article 9, section 2.

*California.* "Taxation shall be equal and uniform throughout the state. All property in this state shall be taxed in proportion to its value, to be ascertained as directed by law." Article 11, section 13.

In the states of *Missouri, Louisiana, Illinois* and *California*, it is held that these provisions do not apply to assessments. *Egyptian Levee Co.* v. *Hardin,* 27 Mo. (6 Jones) 495 ; *Draining Company, Praying &c.* 11 La. Ann. 338 ; *Surgi* v. *Snetchman, id.,* 387 ; *Wallace* v. *Shelton,* 14 *id.,* 498 ; *Bishop* v. *Marks,* 15 *id.,* 147 ; *State* v. *New Orleans, id.* 354 ; *Canal Trustees* v. *City of Chicago,* 12 Ill. 403 ; *City of Chicago* v. *Colby,* 20 Ill. 614 ; *Burnett* v. *City of Sacramento,* 12 Cal. 76 ; *Emery* v. *San Francisco Gas Co.* 28 *id.,* 345.

In *Louisiana*, where, as we have already seen, taxation must be levied on all property in proportion to its value, an act of the legislature was passed providing "that for the

purpose of building, or making and repairing, all levees in said levee district, the commissioners of the same are hereby authorized and empowered to assess an annual tax on all the alluvial lands situated in the parishes of *Carrol* and *Madison,* specifically upon each and every acre." In the case of *Wallace* v. *Shelton et al., supra,* it was held that although the act called it an "annual tax," yet it did not come within the meaning of the constitution, but was purely an assessment.

But it is objected that the rate of assessment must be uniform and equal. In *Bright* v. *McCullough, &c.,* 27 Ind. 223, it was ruled that this requirement of the constitution was fulfilled when the rate of assessment or taxation was uniform and equal throughout the locality where it was imposed. By this act the rate is the same upon every one within reach of the assessment, that is the exact benefit each may receive from the improvement of the street. The legislature have adopted this method of reaching that result. It is certainly reasonable to suppose that as a rule, property along the line of a street improved will be equally benefited; that as a rule, the property fronting upon a street, foot by foot, will be of equal value, and should therefore be equally assessed.

The constitution of *Massachusetts* (Part 2, Chapter 1, Section 1, Article 4) contains, among other provisions as to legislative power, the following: "And to impose and levy proportional and reasonable assessments, rates and taxes upon all the inhabitants of, and persons resident, and estates lying within, the said commonwealth."

We do not think the effect of the language of our constitution requiring "a uniform and equal rate of assessment" differs materially from that employed in the constitution of *Massachusetts,* and to that clause of the constitution a construction has been given by the supreme court of that state. In the case of *Dorgan* v. *The City of Boston,* 12 Allen 223, the legislature had provided for widening a

street in said city, and required that the whole expense of the work, including the sum awarded as damages for the land taken, should be assessed upon and paid by the owners in proportion to the value of the land belonging to each, which should abut on said street, after it should have been completed.

In considering the question of the constitutionality of the law, BIGELOW, C. J., on page 237, says: "It certainly cannot be said that all taxes laid for local purposes of a public nature on those who would be chiefly and directly benefited by the execution of a proposed work, and in proportion to the degree of benefit or profit which each will receive therefrom, are necessarily either unreasonable or unproportional. Nor can it be contended that the constitution, in regard to this species of taxation, furnishes any fixed rules of proportion, or gives any absolute standard by which to determine whether a particular tax is within the limits of the legitimate exercise of the power granted. Undoubtedly, a very wide discretion was intended to be left to the legislature as to the subjects and method of executing the authority conferred on them of imposing taxes for purposes other than those of a general nature; and yet the power is not wholly without limit. In requiring that taxes should be proportional and reasonable, the framers of the constitution intended to erect a barrier against an arbitrary, unjust, unequal or oppressive exercise of the power. *Oliver* v. *Washington Mills*, 11 Allen 268. If, for instance, the legislature should arbitrarily designate a certain class of persons on whom to impose a tax, either for general purposes, or for a local object of a public nature, without any reference to any rule of proportion whatever, having no regard to the share of public charges which each ought to pay relatively to that borne by all others, or to any supposed peculiar benefit or profit which would accrue to those made subject to the tax which would not enure to others, so that in effect the burden would fall on those who had been selected only for the reason that they might be made subject

to the tax, we can not doubt that the imposition of it would be an unlawful exercise of power, not warranted by the constitution, against the exercise of which a person aggrieved might sue for protection. But no such case is made by the present bill. This part of the plaintiff's case rests on the broad proposition that the legislature have no power to authorize the assessment of the cost of a work of a public nature, but the construction of which will be of special and peculiar benefit to adjacent property, on the abutting estates, in proportion to their value. For the reasons already given, we are of opinion that such a tax is neither unreasonable nor unproportional, and that it was competent for the legislature to impose it in the mode prescribed by the statute."

The objection that the law is local, or special, was fully answered in the case of *Goodrich* v. *The Winchester and Deerfield Turnpike Co.*, 26 Ind. 119. So far as this objection is of weight, it applied to the law then under consideration with as much force as to the present statute. Upon that point this language was used: "The law in question is general in its provisions. It is open to all the citizens of the State to avail themselves of its benefits. The principle in it as to taxation is the same as that recognized in the act for the incorporation of cities, so far as the improvement of streets and alleys is concerned, and is identical with that provided for under the act to authorize the construction of levees and drains, approved *June* 12, 1852, held valid in this court in *Anderson* v. *Kerns Draining Co., supra.*"

This language was used, as is plain upon its face, solely with regard to the point under discussion, whether the law was local or special, or, as the constitution requires it to be, general. It was general, as the rule in regard to the improvement of streets is general; that is, it applies equally to every one coming within its reach. In our opinion, the method adopted by the legislature is not in conflict with the constitution.

The judgment is affirmed, with one per cent. damages, and costs.

*S. E. Perkins, T. A. Hendricks, O. B. Hord* and *A. W. Hendricks,* for appellant.

*A. G. Porter, B. Harrison, W. P. Fishback, B. K. Elliott,* and *J. B. Black* for appellee.