W.   . BUSBEE et al. v. COMMISSIONERS OF WAKE COUNTY.

*Injunction—Stock Law—Fences—Assessment, local—Taxation— County, necessary expenses of.*

1. The Court will not interfere by injunction to arrest the action of public officers in the performance of a public duty—such as the construction of a county fence—unless it clearly appears that it is in violation of the constitution or without legal warrant.

2. Local assessments upon property for its peculiar and special benefit, do not fall within the restraint on taxation in Art. V, §3, of the constitution, but the principle of *uniformity* governs both.

3. The provisions of The Code, §2824, apply both to the cases where the adoption of the stock law is dependent on a popular vote, and where it is made absolute by an act of the General Assembly.

4. Local assessments are burdens imposed upon land for the benefit of the property to be benefited, while taxes are *personal* burdens imposed upon and for the benefit of all alike.

(*Norfleet* v. *Cromwell,* 64 N. C., 16; *Simpson* v. *Commissioners,* 84 N. C., 158; *Cain* v. *Commissioners,* 86 N. C., 8; *Newsom* v. *Earnhart, Ibid.,* 391; *Commissioners* v. *Commissioners,* 92 N. C., 180; *Evans* v. *Commissioners,* 89 N. C., 154, cited and approved).

This was a motion for an Injunction heard before *Clark, Judge,* at Chambers in Raleigh on the 30th day of June, A. D.

1885, pursuant to an order to show cause made by Judge Gudger on the 13th day of June, 1885, to restrain the defendant from applying any money in the hands of the Treasurer of Wake county, levied and collected, or to be levied and collected to meet the ordinary and necessary expenses of said county of Wake, to defray the expenses of erecting and building a fence around said county.

His Honor, upon hearing the sworn complaint in said action as an affidavit, and also the affidavit of the defendant, rendered judgment that the said motion be not granted, and plaintiffs excepted and appealed to Supreme Court.

The General Assembly at its session in 1881 passed an act to abolish fences in the county of Wake, and therein required the county commissioners to erect a good and lawful fence around the entire county and to erect gates on all highways leading into said county, and to keep the same in good repair." Chapter 126.

The act provides for the payment of the expenses incurred in executing the work, out of the funds in the county treasury, on the order of the county commissioners; for the condemnation of a space not exceeding twenty feet for the proposed structure upon the lands of recusant and unwilling owners, where it may become necessary, in running which a tract shall not be divided unless already separated in parts by a highway, or the owner assents thereto, but the boundary of the tract shall be followed; and further, that "the act shall not go into effect until the same shall be ratified by the qualified electors of said county," for ascertaining whose will an election is directed to be held. Sections 9, 10, 12, 16.

No steps were taken under this enactment to give it operation, and at the next session, section 16, which directs the taking of the popular vote, upon the result of which it was dependent, was repealed and the following substituted in its place: "That wherever a majority of the qualified voters of any township in said county, as compared with the registration books of said township, shall petition the board of commissioners thereof, the

said board shall declare said chapter 126, acts of 1881, in full force and effect in the said township making the petition. Chapter 329. Again, February 28, 1885, an act was passed and went into effect, repealing that last mentioned, as also §16 of that just enacted, and declaring all of its other provisions to be in full force and effect. Acts 1885, chap. 163. Later in the same session, on March 11, the General Assembly postponed the operation of the preceding act of February, until the first day of September thereafter. Chapter 381.

Besides this special legislation applicable to the county of Wake, a general law on the subject, operative over the whole State, was passed and is contained in §§2799 to 2830, inclusive, of The Code, which authorizes a county, township or district, whether formed by township lines or not, whose electors may so desire and make their will known by an election, to dispense with fences in such county, township, or other territory constituting a district, on the terms and conditions presented therein. §§2812, 2813, 2814. §2824 is in these words: "For the purpose of building such stock law fences, the board of commissioners of the county may levy and collect a special assessment upon all real property taxable by the State and county, within the county, township or district which may adopt the stock law, but no such assessment shall be greater than one-fourth of one per centum on the value of said property."

These are the series of acts of legislation by virtue of which the commissioners were proceeding in the discharge of the public duty imposed upon them, under contract, to put up the fence around the county boundary, and to use the appropriate county funds for that purpose, when the suit was instituted June 10th, 1885, and the commissioners were arrested in their work by a restraining order issued by *Gudger, Judge,* three days later, and obtained upon an *ex parte* application in which the complaint was used as an affidavit in its support. The rule granted against the commissioners commands them to appear before the resident Judge of the district, at the court house in Raleigh, June 30th,

and show cause why they should not be enjoined and restrained from collecting   *   *   *   the assessment of one-fourth of one per cent. on the value of the real estate in the county, whether it had been levied by them on the first Monday of that month for the purpose of constructing the fence under the provisions of the act of 1881, as subsequently modified, or from taking any steps to that end, and from applying any moneys of the county levied to meet its necessary expenses, to defray the expenses of the work and from putting up the fence—and that, meanwhile and until the matter can be heard, the defendants be restrained from using the county funds in the erection of the fence."   In accordance with the rule and in answer to the complaint, the defendants put in their answer as an affidavit; and upon this evidence the plaintiff's motion for a preliminary injunction was heard at chambers in the said city, July 6th, it having been, as we infer, postponed, though the record is silent on the point, from the day designated in the order to that day, when it was refused at plaintiff's costs.

*Messrs. G. V. Strong* and *A. M. Lewis & Son*, for the plaintiffs.
*Messrs. Pace & Holding* and *E. C. Smith*, for the defendants.

SMITH, C. J., (after stating the case).   The restraining intermediate order having served its purpose, and any further restraint being refused, the commissioners proceeded with their work, and, as appears from their sworn affidavits, produced before us since the argument, have caused to be built under contract, all but a small part of the entire enclosing structure, as reported to them by the finance committee, the cost of which remaining part will not exceed three hundred dollars; that the portion so built has been accepted by the commissioners, and paid for in orders on the county treasurer, taken up by him.   The counter affidavits show gaps in the structure at different points, but do not directly impugn the statements of the commissioners in regard to the extent to which the work has progressed.   Arresting the further prosecution of the work under such circumstances, and preventing its

completion, might entail serious loss and damage upon the land owners who, relying upon this common enclosure for the protection of all, may have failed to keep up and repair their own separate fences, while no substantial and practical good would accrue from preventing the completion of the work, the remaining cost of which is such an inconsiderable part of the entire cost. We should not feel called upon, therefore, at this preliminary stage of the action, to put a stop to the work, unless we were fully satisfied that it was being prosecuted in violation of the constitution, and with no legal warrant therefor.   But as it is of public importance that the validity of the legislation under which the commissioners are acting should be settled before the moneys levied under its authority are taken from the tax-paying landowners, upon whom an assessment has been made, we proceed to examine that question, pressed with so much earnestness upon us in the argument of appellants' counsel.   This is the only inquiry that we propose to consider.

There have been several cases before the Court since the inauguration by the Legislature of the policy of substituting a single barrier around a large territory for the protection of the cultivated lands therein, erected at the expense of those reaping its benefits, for the far more costly barriers which individual proprietors engaged in cultivating the soil, would be otherwise compelled to erect at their own separate expense for the security of their crops, and to escape the penal consequences of a violated law.   Such legislation for local and special improvements, beneficial to one species of property, and for the expenses of which, local, as distinguished from general and public assessments for the common good, are made upon the property so benefited, has been repeatedly held not to be under all those constitutional restraints found in article five, section three, though the principle of uniformity runs through both.   The principle underlying local assessments conferring special advantages upon land, is but an application of the maxim illustrated and applied in *Norfleet* v. *Cromwell*, 64 N. C., 16 : *qui sentit commodum, debet sentire et onus.*   Without ex-

amining them in detail, the rule will be found to be vindicated in many, if not all, the cases decided in this Court. *Simpson* v. *Commissioners*, 84 N. C., 158; *Cain* v. *Commissioners*, 84 N. C., 8; *Newsom* v. *Earnhart, Ibid.*, 391; *Ibid.*, 552; 92 N. C., 180; *Ibid.*, 78.

The right to levy and collect assessments upon lands to meet the costs of constructing a boundary barrier against the inroads of stock, enclosing them, being conceded upon the authority of decided cases, the plaintiffs deny that any such power, though possessed by the Legislature, has been conferred upon the defendants, and hence it cannot be exercised. The argument is, that they are directed to take the moneys needed for the purpose out of the county treasury, and the case is not within the terms of §2824 of The Code, which is confined to cases in which a favoring and approving popular vote has been taken, by force of the qualifying words " within the county, township or district which may adopt the stock law."

It is true this language has reference more immediately to the preceding sections in which the sanction of the electors is required, but it cannot be less applicable to the present case, when no vote is necessary, and the authority to build the fence is given without any such condition, and must convey the right to use the appropriate means of payment. It is an essential condition in the cases where an approval by the electors must be first obtained; it is put out of the way when the Legislature dispenses with the approval, and commands the work to be done absolutely. In our construction of this clause, the defendants may assert and exercise the right to levy and collect the assessment authorized by it. Again, it is objected that the tax is in excess of constitutional limits and cannot be raised except by a vote, it not being for any necessary county expense. Article 7, §7. Nor for "a special purpose with the special approval of the General Assembly." Article 5, §6. We can scarcely conceive a case in which this special approval is given more clearly than in its positive command to the commissioners to do the work and providing

the means for its being done.   But these local assessments are not under all the restraints put upon the taxing power.   They stand upon a different footing, and rest upon the equitable and just consideration, that lands rendered more valuable by the improvement, ought to contribute to the expenses of making the improvement, and that these expenses ought not to fall upon the entire body of the tax-payers; as well those not benefited as those who are benefited.   The advantage is to the land and to the persons only as owners of the land.

In answer to a suggestion comparing the benefits of a school established in a district, with that received by land for a local improvement, a careful writer on the subject thus speaks:

" In the theory of local assessments, a benefit received is not of the same kind as the benefit contemplated in taxing a county or school district.   In the latter cases the benefit enures to all the inhabitants; in the local assessment it is a benefit not to persons but to land.   Such a benefit must necessarily be a pecuniary benefit to the land adjacent to the improvement, arising from increased facilities for travel which increase the market value of the land; and if this be the character of the benefit, then the conclusion follows irresistibly that the tax ought to be only to the extent of the benefit.   Beyond that benefit or increased value, the owner of the land receives no more benefit from the improvement than any other inhabitant of the city.   This is in accord with the universally recognized theory of local assessments, and these are a class of cases which require the practice and theory to be consistent."   Burroughs on Taxation, 406.

Reiterating the language employed in adapting the rule to the facts presented in *Cain* v. *Commissioners, ante,* which are essentially the same as in this before us, we say : " We can scarcely conceive a case more clearly within the compass of the rule than that now under consideration.   *   *   * The enactment proposes to dispense with separate enclosures for each man's land, and substitute a common fence around the county boundary, to protect all agricultural lands from the inroads of stock from abroad, and

the fencing in of stock owned within the limits. It creates a community of interest in upholding one barrier in place of separate and distinct barriers for each plantation; and thus in the common burden, lessens the weight that each cultivator of the soil must otherwise individually bear. As the greater burden is thus removed from the land owner, he, as such, ought to bear the expense by which this result is brought about." It is to be observed that the policy embodied in this form of legislation is growing in public favor, of which no stronger proof can be given than that furnished in the numerous enactments on the subject to be found upon the statute book. Should it prevail over the whole State it would be attended with a large reduction in expense, and, perhaps, pass out of the domain of local improvement and become of public utility, but of this we express no opinion, as our duty is to expound and enforce such laws as the General Assembly may possess the power and choose to enact for the general welfare. It is not easy to discriminate between an enactment that compels every farmer to keep a sufficient fence around his land in cultivation, at his own expense, under the penalty of exposure to a public prosecution, and that which directs a single fence to be constructed around the boundaries of a county at the common expense and for the common benefit of all. Nor is it plain that such a fence is not one of the necessary expenses of a county, as much so as an expensive bridge, such as we held the commissioners could deem such, in *Evans* v. *Commissioners*, 89 N. C., 154.

Our consideration leads us to the conclusion reached by his Honor, and we find no error in his refusal to award the injunction asked for. This opinion will be certified, with instructions to the Court below that the cause may proceed according to law.

No error.                                    Affirmed.