The State on the relation of M. F. SKINNER v. A. J. BATEMAN et al.

*Bond, Official—Schools—Statute—Treasurer.*

1. The effect of the Acts of the General Assembly of 1883 and 1885 in relation to a graded school in Edenton, was to supersede the organization of the school district within the same territory, and confer all the powers theretofore exercised by the school committee under the general law and transfer all moneys then in the treasury to the trustees created by said special enactments.

2. The school committee for the superseded district had no authority to contract or give orders for the payment for teaching a school therein after the passage of the Acts of 1883 and 1885; and it was no breach of the county treasurer's bond to refuse. to pay upon their order, although at the time he had moneys in his hands apportioned originally to said district.

(*Puett* v. *Commissioners*, 94 N. C., 709, cited).

CIVIL ACTION, tried before *Gudger, Judge,* at Spring Term, 1886, of CHOWAN Superior Court.

A jury trial was waived, and judgment having been pronounced upon the facts found by the Court, the plaintiff appealed.

The plaintiff was employed by the school committee of district No. 3, in Chowan, for the free education of white children, to teach therein for four months, terminating on January 30, 1885, at a compensation of twenty-five dollars per month. Having completed her contract on the day mentioned, she applied for and obtained from the committee an order on the county treasurer, the principal defendant, A. J. Bateman, for the money due for her services, he then having funds received from his predecessor in office sufficient for the purpose, and payment was refused. Thereupon she instituted the present action on the treasurer's- official bond against him and the other defendants, his sureties, to recover in damages the amount specified in the order.

The defence rests upon the alleged effect of three several acts of the General Assembly, ratified respectively on March 3d, 1883, January 19th, 1885, and February 25th, 1885, whereby the territory constituting the said third district is made a graded school district for the instruction of the same class of children which, it was insisted, displaced and superseded the former district and converted it into a graded school district with enlarged means of usefulness, and hence the plaintiff's employment was unauthorized and the fund not liable to the orders of the said school committee.

The act of March 3d, 1883, forms the graded school district and places the school under the management of a board of trustees who are authorized (§3) "to employ teachers and do all such acts as shall be necessary to carry on said graded school, and shall be the custodian of all public school property for the white race of said school district."

Section four, more explicit in its bearing upon the matter in controversy, enacts:

"That all public school money which shall from time to time be collected under the general school law for the white race of said school district, and all special school taxes which may from time to time be collected from white persons in said school district, shall be applied for keeping up the said graded school for white children under the orders and directions of said board of graded school trustees for the white race."

A similar provision is made for a graded school for colored children, and then it is enacted that "the treasurer of Chowan and the sureties on his official bond" shall become "responsible for the proper disbursement of all moneys collected under this act," §8.

This enactment was repealed at the session of 1885, and another act, entitled "An act to establish the Edenton Graded School," ratified on the 19th day of January, (Acts 1885, ch. 7,) substituted in its place, in which certain dis-

criminating features in the former, supposed to be obnoxious to the Constitution, and since held to be in *Puett* v. *Commissioners*, 94 N. C., 709, are omitted. The essential provisions of this act, so far as they affect the present controversy, may be thus summarized: The Edenton graded school for School District Number Three, of Chowan county, for the white race, is incorporated, and its functions to be exercised by a board of trustees who are to organize by the appointment of a president, secretary and treasurer, of whom the latter is to have charge of the funds, except the public funds in the custody of the county treasurer," §§1 and 2.

The trustees have authority to employ and pay teachers, &c., and "to do all such acts as may be necessary to carry on said school and to secure its good order," and *all powers and duties formerly* vested in the school committee for the white race of said district are vested in said board," §3.

Section four we quote in full: "The said board shall be custodian of all public school property for the white race of said district, and all unexpended public school money which has been apportioned or collected for the white race of said school district, under the general laws of the State, not applicable to contracts heretofore legally made, and all of (the last word is stricken out by the amendatory act of February 25th, ch. 138,) which shall hereafter from time to time be so collected or apportioned, shall be applied for keeping up said graded school, under the orders and directions of said board, and the treasurer of Chowan county shall pay out the same on the order of said board, approved and signed by its president and secretary; but no order shall be given on the county treasurer until the service or property for which it is given has been furnished in full, and the public funds appropriated to said school shall be drawn from the county treasury at the rate of one tenth thereof for each month the school may have been in operation."

*Mr. Charles M. Busbee,* for the plaintiff.
*Mr. John Devereux, Jr.,* for the defendants.

SMITH, C. J., (having stated the case). We think it manifest that the funds in the county treasurer's hands are withdrawn from the control of the committee of the former school district, and at the time when they undertook by their order to appropriate the required sum to the plaintiff's demand, their authority had ceased, and that money, as well as that derived from other sources, was intended to be used in the support of the supplanting graded school with its greatly improved advantages for gratuitous education. This is certainly so, unless a different result is produced by the qualifying words following the transfer of the funds collected under the general law, "not applicable to contracts heretofore legally made." Does this clause save the present contract and warrant its payment in the manner adopted?

In our opinion the committeemen were disabled to engage a teacher or to pay one after the act of 1883 was passed, the evident purpose of which is to adopt the facilities for a better education, supplied by a graded school, which, with the means at the disposal of the trustees, it was hoped would be kept up for forty weeks in the year; ch. 220, sec. 4.

It could not have been intended to cripple the latter by a continuance of the former district school and the use of the funds in its support. All the resources for the maintenance of the substituted graded school were required, and hence the action of the committee in keeping in operation the other school was unauthorized.

Besides, this section simply means not that the funds shall remain in the defendant's hands for disbursement in meeting pre-existing valid contracts, but that such contracts must be paid before the moneys can be used for the graded school. The transfer is subject to the incumbrance. Still it must pass into the hands of the new depository, and in his hands

is first applicable to the antecedent obligations incurred, and then to the use of the graded school. Hence, there was no breach of the defendant's bond in refusing to recognize the authority of the committee to direct the payment whose functions had been wholly withdrawn.

If the plaintiff has any redress she has not pursued the proper course to obtain it, but should make her demand of the trustees, and we do not mean to intimate that her claim upon the fund is valid.

We therefore concur in the ruling of the Court that the plaintiff cannot recover, and in dismissing the action at the appellant's costs.

No error.                                    Affirmed.