H. E. TRIPP ET AL. v. THE COMMISSIONERS OF PITT COUNTY ET ALS.

(Filed 28 February, 1912.)

1. **Stock Law—Added Territory—Boundaries—Interpretation of Statutes.**

Chapter 702, Laws of 1911, prescribes a well-defined line, all west of which is to be added to the stock-law territory of Pitt County, which, with the lines of such territory theretofore existing by chapter 386, Laws 1901, makes complete boundary lines to the old and new territory, and includes stock-law districts of inconsiderable area already established by the Legislature: *Held,* chapter 702, Laws 1911, enlarging "the present stock-law territory of Pitt County," refers only to the territory embraced in chapter 386, Laws 1901, entitled "An act to consolidate and enlarge the stock-law territory of Pitt County."

2. **Stock Laws — County Commissioners — Appointment of Fence Commissioners — Collateral Attack—Injunction—Interpretation of Statutes—Officer de Facto.**

The action of the board of county commissioners in appointing certain fence commissioners at a special meeting, without giving the public notice required by Revisal, sec. 1317, cannot be collaterally attacked, or called in question in proceedings to enjoin them from acting as such; and the fence commissioners acting under the appointment are officers *de facto.*

3. **Stock Law—County Commissioners—Fence Commissioners—Irregularity of Appointment—Quorum—Valid Acts.**

The action of a majority of the board of fence commissioners is valid, and the validity thereof is not affected by the irregularity of the appointment of a minority number, when all concur.

4. **Stock Laws—Uniformity of Penalties—Interpretation of Statutes.**

The small areas of stock-law territory in Pitt County included in the territory added by chapter 702, Laws 1911, to that described in chapter 386, Laws 1901, have the same penalties imposed for the infraction of the law as those prescribed by chapter 386, Laws 1901, being "the same as those in the Revisal," and hence it is not indefinite or uncertain what penalties would apply.

5. **Stock Laws—County Commissioners—Fence Commissioners—Trespass—Interpretation of Statutes.**

The Fence-law Commissioners of Pitt County, proceeding under chapter 702, Laws 1911, in the added stock-law territory, to

grade, build, and widen the public road along which the new boundary fence runs, in accordance with the provisions of chapter 714, Laws 1905, and chapter 386, Laws 1901, are not trespassers in so doing.

6. Stock Laws—Assessments—Vote of People—Constitutional Law.
    Laying an assessment for building a stock-law fence in territory where the law is effective is not taxation requiring its submission to a vote of the people of the district, especially where the money for the purpose is in hand from other lawful sources; and, in this case, being for the future repair of the line in common with other fencing required, an assessment may be laid under chapter 386, Laws 1901.

7. Stock Laws—Building Fences—Interpretation of Statutes.
    The Fence Commissioners of Pitt County are authorized by chapter 386, Laws 1901, to use convicts in building fences on the line of the territory added by chapter 702, Laws 1911.

8. Stock Laws—Building Fences—Assessments—Interpretation of Statutes—Constitutional Law—Referendum.
    The courts will construe a statute to ascertain as far as possible the intention of the Legislature, and there being nothing in the Constitution, Art. VII, sec. 7, which requires that an assessment in stock-law territory for the purpose of fencing be referred to a vote of the people, it is not required of chapter 386, Laws 1901, that this should have been provided for in order to sustain its validity. The Referendum discussed.

APPEAL by both parties from an order of *Foushee, J.,* rendered 15 February, 1912, at chambers; from PITT.

*W. T. Evans and Harry Skinner for plaintiffs.*
*F. G. James & Son and Albion Dunn for defendants.*

CLARK, C. J. The General Assembly of 1911 enacted chapter 702, "To enlarge the present stock-law territory of Pitt County." Section 1 provides that "the following prescribed line shall constitute a part of the boundary line of the stock-law territory of Pitt County." Then follows a well-defined description of the only line (which is about 14 miles long), and it is added: "All of the territory *west* of said boundary line not included within the stock-law territory shall be established and added to and consolidated with the present stock-law territory of said county." The new territory has only this one boundary, as all the other boundaries of that territory are those which were the

eastern boundary of the "stock-law territory" created by chapter 386, Laws 1901, with which it was consolidated. The old line is a crescent and the new line is like the chord of a bow, the space inclosed thereby being the added territory.

Section 2 provides that "On and after 1 January, 1912, the territory so becoming a part of the now existing stock-law territory of Pitt County shall be subject to all the provisions of the law that now applies or may hereafter apply to the stock-law territory of said county."

Prior to 1901 there were several small stock-law inclosures in Pitt County. The Legislature that year passed chapter 386, entitled "To consolidate and enlarge the stock-law territory of said county." The territory so styled "The stock-law territory of Pitt County" is the only one which, in the language of chapter 702, Laws 1911, could be "enlarged" by this newly added territory, for it is the only stock-law inclosure which the newly added district would touch and of which the prescribed line could become "a part of its boundary line," and the only one to which (in the language of the act) it could be "added to and consolidated with the present stock-law territory of said county." Said "stock-law territory of Pitt County," as it is styled in said chapter, Laws 1911, is also the only stock-law territory which would come within the description of chapter 702, Laws 1911, "west of said boundary line."

The "stock-law territory" described by that term in Laws 1901, ch. 368, covers something over four townships and lies wholly on the south side of Tar River and is the only considerable body of stock-law territory in Pitt County. It touches and reaches halfway round the new district added by the act of 1911, which therefore, as already said, required only one boundary, the 14-mile line above referred to. The other stock-law districts in Pitt County are inconsiderable in area and are not contiguous to the new district nor to each other. They are:

1. Part of Belvoir Township on the other or north side of Tar River, and does not lie "west" of the new boundary line, as required by the act of 1911.

2. A narrow strip about 2 miles wide lying on the south side of the river and running down to the Beaufort line and east of the new boundary.

3. A small territory around each of the towns of Ayden and Winterville, but these are within the limits of the new territory and themselves fall within the terms of section 2 of the act of 1911.

It is thus plain that chapter 702, Laws 1911, "To enlarge the present stock-law territory of Pitt County," refers to, and can only refer to, "the territory" embraced in chapter 386, Laws 1901, entitled "To consolidate and enlarge the stock-law territory of Pitt County."

This action is brought by three plaintiffs who aver that they own land embraced within the district to be added to the aforesaid stock-law territory by the act of 1911. They seek to enjoin the commissioners of Pitt County and the fence commissioners from building a fence along said boundary described in the act of 1911. Owing to the great curve in the eastern boundary of the "stock-law territory" embraced in the act of 1901, ch. 386, it is averred, that the fence hitherto kept up on said eastern boundary is some 80 miles long. The county commissioners in their affidavit aver that the new 14-mile fence required by the new act relieves them from at least 50 miles of fence—that is, that the old eastern boundary was at least 64 miles long. This act of 1911 was doubtless passed with some view to that economy.

The plaintiffs ask the restraining order on the following grounds:

1. That the appointment of the fence commissioners by the county commissioners was illegal.

The facts are that at the regular meeting on the first Monday in January, 1912, the county commissioners elected three new fence commissioners, two of the old commissioners holding over, and the board of county commissioners adjourned "subject to the call of the chairman." Two of the fence commissioners failing to qualify, the county commissioners were called in session in an adjourned meeting and two others were elected in their places. The plaintiffs contend that said meeting was illegal, and therefore the board of fence commissioners is an illegal body, because a special session of the county commissioners could not be held except after public notice in the

manner required by Revisal, 1317. The object of this provision is to protect the county against excessive per diem on the part of the county commissioners. These fence commissioners were *de facto* officers, recognized by the electing body as such, and their title cannot be called in question in this injunctive proceeding and in this collateral way. Besides, three of the commissioners have an unquestioned title, and their action would be valid. *Conference v. Allen,* 156 N. C., 528.

2. The plaintiffs contend that the act is invalid because it is indefinite and uncertain what penalties would apply, because there are other inclosures in Pitt County of stock-law districts.

But, as we have seen, the "stock-law territory" to which this new territory is added is that described in chapter 386, Laws 1901, and the penalties therein prescribed are "the same as those in the Revisal," as indeed are also the penalties in the stock-law district in Belvoir Township north of Tar River and nearly so those in the district east of the new boundary. The penalties in the two little inclosures around Ayden and Winterville are slightly different, but they are inside the territory newly added, and therefore would come within the terms of the act of 1911 which makes applicable the penalties in the other stock-law districts, which, as is above said, are those of the Revisal. Besides all this, the penalties to be imposed are not a matter which arises in this proceeding, which is to restrain the erection of the stock-law fence. That matter would properly come up in any proceeding to impose a penalty.

3. The plaintiffs further contend that the county commissioners have no right to trespass on private property to erect the fence.

The county commissioners are grading and building and widening the public road along which the new boundary fence runs. And they are erecting the fence on the territory of said road. The road is being graded by virtue of chapter 714, Laws 1905, which provides how the right of way shall be acquired, as also does the act of 1901, ch. 386, in regard to the fence. Even if this last did not apply, it would be the duty of the commissioners to build the fence under the provisions of the general law. *Busbee v. Commissioners,* 93 N. C., 143.

4. The plaintiffs further contend that the act is unconstitutional because the tax for building the fence is laid without being submitted to a vote of the people.

It has been settled by repeated decisions of this Court (*Busbee v. Commissioners, supra,* and cases there cited), that an assessment for the building of a stock-law fence is not a tax which requires a referendum vote by the people. Besides, it is not contradicted that no assessment has been made, or is now necessary, to build this 14 miles of new fence, because there is in hand the sum of $4,000 raised in the "stock-law territory" created by chapter 386, Laws 1901, which has been saved by it becoming unnecessary to maintain the long line of 64 miles of fence which was formerly the eastern boundary of that territory and which has now been allowed to go down. Should it become necessary in the future to lay an assessment, it would be laid under the act of 1901, ch. 386, for the repair of this 14-mile fence in common with the other fencing required for said territory, or it could be laid under the general statute. *Busbee v. Commissioners, supra.*

5. The last ground of the plaintiffs is that the county commissioners had no right to use the county convicts to build said fence.

It appears that the county convicts are grading the county road, and that county commissioners have hired them out to the fence commissioners to put up this fence alongside the road, as they are fully authorized to do so by virtue of chapter 87, Laws 1907.

This is the not unusual case where those living within territory to which the stock law is applied are more or less divided in regard to the advisability of a stock law. Very often the General Assembly in passing such acts submit, as in the general act in the Revisal, the question of the acceptance of the act by a referendum to the people. In twenty-five States there are provisions which give the people a right to call for a referendum or a popular vote to decide whether any act passed by the Legislature shall be approved or not, at the ballot box. But in this State there is as yet no such provision in the Constitution, except as to taxes in certain cases (Const., Art. VII, sec. 7), nor by statute; and whether an act of this kind shall be sub-

mitted to the people, or not, is as yet left to the discretion of the General Assembly. The courts have no power to require that an act be submitted to popular approval of the people interested, by a referendum. The courts all hold that assessments for building stock-law fences, paving streets, and the like, do not come within the constitutional provision, Article VII, sec. 7, which requires a submission to a referendum. *Cain v. Commissioners,* 86 N. C., 8, and cases citing it in *Anno. Ed.; Raleigh v. Peace,* 110 N. C., 32. The courts are required to hold every act constitutional unless as the United States Supreme Court says it is unconstitutional "beyond all reasonable doubt." *Ogden v. Saunders,* 12 Wheaton, 213. It is the bounden duty of the courts, also, not only to hold an act valid, if by any reasonable construction it can be so held, but they should give to every statute a reasonable construction and effectuate as far as possible the intention of the Legislature.

However desirable it might be that there should have been a referendum vote on this measure by the people of the territory added by the act to the "stock-law territory of Pitt County," the Legislature did not see fit to so order, and the Court has no power to change the action of the Legislature.

The injunction as to the county commissioners was properly dissolved, as should also have been done in regard to the fence commissioners.

Modified and affirmed.