The General Assembly of 1911 enacted chapter 702, "To enlarge the present stock-law territory of Pitt County." Section provides that "the following prescribed line shall constitute a part of the boundary line of the stock-law territory of Pitt County." Then follows a well-defined description of the only line (which is about 14 miles long), and it is added: "All of the territory west of said boundary line not included within the stock-law territory shall be established and added to and consolidated with the present stock-law territory of said county." The new territory has only this one boundary, as all the other boundaries of that territory are those which were the eastern boundary of the "stock-law territory" created by chapter 386, Laws 1901, with which it was consolidated. The old line is a crescent and the (182) new line is like the chord of a bow, the space inclosed thereby being the added territory.
Section 2 provides that "On and after 1 January, 1912, the territory so becoming a part of the now existing stock-law territory of Pitt County shall be subject to all the provisions of the law that now applies or may hereafter apply to the stock law territory of said county."
Prior to 1901 there were several small stock-law inclosures in Pitt County. The Legislature that year passed chapter 386, entitled "To consolidate and enlarge the stock-law territory of said county." The territory so styled "The stock-law territory of Pitt County" is the only one which, in the language of chapter 702, Laws 1911, could be "enlarged" by this newly added territory, for it is the only stock-law inclosure which the newly added district would touch and of which the prescribed line could become "a part of its boundary line," and the only one to which (in the language of the act) it could be "added to and consolidated with the present stock-law territory of said county." Said "stock-law territory of Pitt County," as it is styled in said chapter, Laws 1911, is also the only stock-law territory which would come within the description of chapter 702, Laws 1911, "west of said boundary line."
The "stock-law territory" described by that term in Laws 1901, ch. 368, covers something over four townships and lies wholly on the south side of Tar River and is the only considerable body of stock-law territory in Pitt County. It touches and reaches halfway round the new district *Page 153 
added by the act of 1911, which therefore, as already said, required only one boundary, the 14-mile line above referred to. The other stock-law districts in Pitt County are inconsiderable in area and are not contiguous to the new district nor to each other. They are:
1. Part of Belvoir Township on the other or north side of Tar River, and does not lie "west" of the new boundary line, as required by the act of 1911.
2. A narrow strip about 2 miles wide lying on the south side of the river and running down to the Beaufort line and east of the new boundary.
3. A small territory around each of the towns of Ayden and Winterville, but these are within the limits of the new territory and themselves fall within the terms of section 2 of the act of 1911. (183)
It is thus plain that chapter 702, Laws 1911, "To enlarge the present stock-law territory of Pitt County," refers to, and can only refer to, "the territory" embraced in chapter 386, Laws 1901, entitled "To consolidate and enlarge the stock-law territory of Pitt County."
This action is brought by three plaintiffs who aver that they own land embraced within the district to be added to the aforesaid stock-law territory by the act of 1911. They seek to enjoin the commissioners of Pitt County and the fence commissioners from building a fence along said boundary described in the act of 1911. Owing to the great curve in the eastern boundary of the "stock-law territory" embraced in the act of 1901, ch. 386, it is averred that the fence hitherto kept up on said eastern boundary is some 80 miles long. The county commissioners in their affidavit aver that the new 14-mile fence required by the new act relieves them from at least 50 miles of fence — that is, that the old eastern boundary was at least 64 miles long. This act of 1911 was doubtless passed with some view to that economy.
The plaintiffs ask the restraining order on the following grounds:
1. That the appointment of the fence commissioners by the county commissioners was illegal.
The facts are that at the regular meeting on the first Monday in January, 1912, the county commissioners elected three new fence commissioners, two of the old commissioners holding over, and the board of county commissioners adjourned "subject to the call of the chairman." Two of the fence commissioners failing to qualify, the county commissioners were called in session in an adjourned meeting and two others were elected in their places. The plaintiffs contend that said meeting was illegal, and therefore the board of fence commissioners is an illegal body, because a special session of the county commissioners could not be *Page 154 
held except after public notice in the manner required by Revisal, (184) 1317. The object of this provision is to protect the county against excessive per diem on the part of the county commissioners. These fence commissioners were de facto officers, recognized by the electing body as such, and their title cannot be called in question in this injunctive proceeding and in this collateral way. Besides, three of the commissioners have an unquestioned title, and their action would be valid.Conference v. Allen, 156 N.C. 528.
2. The plaintiffs contend that the act is invalid because it is indefinite and uncertain what penalties would apply, because there are other inclosures in Pitt County of stock-law districts.
But, as we have seen, the "stock-law territory" to which this new territory is added is that described in chapter 386, Laws 1901, and the penalties therein prescribed are "the same as those in the Revisal," as indeed are also the penalties in the stock-law district in Belvoir Township north of Tar River and nearly so those in the district east of the new boundary. The penalties in the two little inclosures around Ayden and Winterville are slightly different, but they are inside the territory newly added, and therefore would come within the terms of the act of 1911 which makes applicable the penalties in the other stock-law districts, which, as is above said, are those of the Revisal. Besides all this, the penalties to be imposed are not a matter which arises in this proceeding, which is to restrain the erection of the stock-law fence. That matter would properly come up in any proceeding to impose a penalty.
3. The plaintiffs further contend that the county commissioners have no right to trespass on private property to erect the fence.
The county commissioners are grading and building and widening the public road along which the new boundary fence runs. And they are erecting the fence on the territory of said road. The road is being graded by virtue of chapter 714, Laws 1905, which provides how the right of way shall be acquired, as also does the act of 1901, ch. 386, in regard to the fence. Even if this last did not apply, it would be the duty of the commissioners to build the fence under the provisions of the general law. Busbee v.Commissioners, 93 N.C. 143.
4. The plaintiffs further contend that the act is unconstitutional because the tax for building the fence is laid without being submitted (185) to a vote of the people.
It has been settled by repeated decisions of this Court (Busbee v.Commissioners, supra, and cases there cited), that an assessment for the building of a stock-law fence is not a tax which requires a referendum vote by the people. Besides, it is not contradicted that no assessment has been made, or is now necessary, to build this 14 miles of new *Page 155 
fence, because there is in hand the sum of $4,000 raised in the "stock-law territory" created by chapter 386, Laws 1901, which has been saved by it becoming unnecessary to maintain the long line of 64 miles of fence which was formerly the eastern boundary of that territory and which has now been allowed to go down. Should it become necessary in the future to lay an assessment, it would be laid under the act of 1901, ch. 386, for the repair of this 14-mile fence in common with the other fencing required for said territory, or it could be laid under the general statute. Busbee v.Commissioners, supra.
5. The last ground of the plaintiffs is that the county commissioners had no right to use the county convicts to build said fence.
It appears that the county convicts are grading the county road, and that county commissioners have hired them out to the fence commissioners to put up this fence alongside the road, as they are fully authorized to do so by virtue of chapter 87, Laws 1907.
This is the not unusual case where those living within territory to which the stock law is applied are more or less divided in regard to the advisability of a stock law. Very often the General Assembly in passing such acts submit, as in the general act in the Revisal, the question of the acceptance of the act by a referendum to the people. In twenty-five States there are provisions which give the people a right to call for a referendum or a popular vote to decide whether any act passed by the Legislature shall be approved or not, at the ballot box. But in this State there is as yet no such provision in the Constitution, except as to taxes in certain cases (Const., Art. VII, sec. 7), nor by statute; and whether an act of this kind shall be submitted to the people, or not, is as yet left to the discretion of the General Assembly. The (186) courts have no power to require that an act be submitted to popular approval of the people interested, by a referendum. The courts all hold that assessments for building stock-law fences, paving streets, and the like, do not come within the constitutional provision, Article VII, sec. 7, which requires a submission to a referendum. Cain v.Commissioners, 86 N.C. 8, and cases citing it in Anno. Ed.; Raleigh v.Peace, 110 N.C. 32. The courts are required to hold every act constitutional unless as the United States Supreme Court says it is unconstitutional "beyond all reasonable doubt." Ogden v. Saunders, 12 Wheaton, 213. It is the bounden duty of the courts, also, not only to hold an act valid, if by any reasonable construction it can be so held, but they should give to every statute a reasonable construction and effectuate as far as possible the intention of the Legislature.
However desirable it might be that there should have been a referendum vote on this measure by the people of the territory added by the *Page 156 
act to the "stock-law territory of Pitt County," the Legislature did not see fit to so order, and the Court has no power to change the action of the Legislature.
The injunction as to the county commissioners was properly dissolved, as should also have been done in regard to the fence commissioners.
Modified and affirmed.
Cited: Evans v. Forbes, post, 586.