THE CITY OF RALEIGH v. J. A. PEACE.

*Municipal Corporations—Assessments—Taxation--Constitution.*

1. Special assessments for local municipal improvements are not within the restraints imposed by Article 7, section 9 of the Constitution, but the rule of uniformity must be observed.

2. Such assessments are founded upon the principle that the land abutting upon the improvement receives a benefit over and above the property of the citizens generally, and should be charged with the value of such peculiar benefits.

3. The power to levy such assessments is derived solely from the Legislature, acting either directly or through its local instrumentalities, and the Courts will not interfere with the exercise of the discretion vested in the Legislature as to the necessity for, or the manner of making such assessments, unless there is a want of power or the method adopted, for the assessment of the benefits is so clearly inequitable as to offend some constitutional principle.

4. The ordinance, under which this assessment was made, provides for a taxing district and a proper apportionment, and even if the charter was invalid, the said ordinance is fully sustained by the general act. *The Code,* § 3803.

5. It seems that section 4, article 8 of the Constitution, requiring that the Legislature shall provide for the organization of cities, towns, etc., and "restrict their power of taxation, assessment," etc., does not apply to special improvements of this character. Even if it did, an act of the Legislature authorizing an assessment is not void because it does not prescribe all of the particulars relating to such assessment. It is sufficient if it authorizes a fair and equitable method of ascertaining the peculiar benefits conferred upon the property, and apportioning the costs between the abutting owners.

6. The powers to enforce the collection of such assessments are limited to the specific property presumed to be benefited, and do not authorize a personal judgment against the owner of the property, and, therefore, so much of the act, in this case, as provides that a judgment rendered for the amount alleged to be due, might be docketed and enforced as other judgments, is invalid.

MERRIMON, C. J., and DAVIS, J., dissenting.

CIVIL ACTION to recover of defendant an amount of money expended by the city for paving one-third of Fayetteville street in front of the lot owned by the defendant on said street, between Morgan and Martin streets, tried before *Winston, J.*, at April Term, 1891, of WAKE Superior Court.

The following facts were agreed upon :

1. In the month of June, 1888, after notice to defendant, as provided in section 60, of the charter of said city, and in the ordinance named below, that he was required by an ordinance of the Board of Aldermen to have the street in front of his real property paved, and after refusal of defendant to have such paving done for more than thirty days after notice, the plaintiff paved 58⅓ yards on Fayetteville street in front of defendant's property, said paving being worth and having cost $1.20 per yard.

2. That defendant was notified and demanded as aforesaid by plaintiff to pave said 58⅓ yards, pursuant to said ordinance and section 60, and the number of yards demanded to be paved was one-third of said street in front of defendant's property. All of said street in front of said property was paved, so that said 58⅓ yards did not comprise all the paving done on said street.

3. The defendant was at the time of notice and paving aforesaid, and now is, the owner of said property in front of which the paving was done.

4. That after the paving was done by plaintiff, the plaintiff demanded of defendant the payment of the value and cost of same, and payment was refused.

110 — 3

5. That on February 28, 1890, summons in said action having been prior to that time duly issued and served upon defendant, a Justice of the Peace, before whom it was returnable, rendered judgment in favor of plaintiff for $70, with interest from July 1, 1888, the same being the value and cost of the paving, and the defendant appealed to the Superior Court.

Section 60 of the charter of said city is as follows: "That every owner of a lot or person having as great an interest therein as a lease for three years, which shall front any street on which a sidewalk has been established, shall improve, in such manner as the aldermen may direct such sidewalk as far as may extend along such lot, and on failure to do so within twenty days after notice by the Chief of Police to said owner, or, if he be a non-resident of the County of Wake, to his agent, or if such non-resident have no agent in said county or his personal notice cannot be served upon the owner or agent, then, after publication of a notice by the Chief of Police for thirty days in some newspaper published in Raleigh, calling on the owner to make such repairs, the aldermen may cause the same to be repaired, either with brick, stone or gravel, at their discretion, and the expense shall be paid by the persons in default. Said expense shall be a lien upon said lot, and if not paid within six months after completion of the repairs, such lot may be sold, or enough of the same, to pay such expenses and cost, under the same rules, regulations and restrictions, rights of redemption and saving, as are prescribed in said charter for the sale of land for unpaid taxes. The Board of Aldermen shall have power to require every owner of real estate in the city to pave one-third of the street or streets in front of his or her land, in such manner and with such material as the Street Committee of the Board of Aldermen may direct, and to enforce such requirement by proper fines and penalties, and upon the failure of such owner to do such paving, the city

may have same done, and the costs thereof may be assessed upon the property of such delinquent and added to the taxes against him or her, and collected in the same manner that other taxes or assessments are collected, or judgment may be taken by the city, before the Mayor or any Justice of the Peace, or in the Superior Court of Wake, for the cost of such paving, and when docketed in the Superior Court of Wake such judgments shall have the same lien as is possessed by other judgments docketed in said Superior Court, and be enforced in like manner "

Ordinance referred to is as follows:

"*Resolved*, That the owners of real estate on Fayetteville street, between Morgan and Martin streets, be and are hereby required and directed to pave so much of said street as lies in front of their respective lots from the curbing of the sidewalk to the pavement laid by the city on said street, being one-third of the said street, in such manner and with such material as the Street Committee of the Board may direct, to-wit, with rubble stone. And if any owner shall fail for the period of thirty days after written notice from said committee to do such paving, then the same shall be done by the city for $1.20 per square yard at the cost of such delinquent, as provided in section 2 of an act of the General Assembly of 1887, entitled 'An Act to amend the Charter of the City of Raleigh,' ratified on the 7th of March, 1887, and made a part of this case."

The Court found, as a further fact, that all the other property owners along Fayetteville street were likewise required by plaintiff, under like authority as they seek to exercise in this case, to pave one-third of the sidewalk in front of their respective buildings, and that the cost of said paving was reasonable. The Court rendered judgment for plaintiff.

The defendant excepted to the judgment, upon the ground that the same was not warranted by the Constitution and laws of this State, and appealed.

*Mr. J. N. Holding*, for plaintiff.
*Messrs. G. V. Strong* and *A. Stronach*, for defendant.

SHEPHERD, J : While we are of the opinion, for the reasons hereinafter stated, that the particular judgment rendered in this action cannot be sustained, yet, as the validity of the ordinance under which the assessment is made is drawn in question, and as it is of great importance that it should be passed upon by this Court, we deem it our duty to consider this and such other points that are presented in the record as may be necessary to an intelligent disposition of the present and perhaps other cases which may arise upon the subject.

(1). The authority of the Legislature, either directly or through its local instrumentalities, to exercise the taxing power in the form of local or special assessments, has been so firmly established by judicial decision in this and other States of the Union, that it can hardly, at this late day, be considered an open question ; but as it seems to be controverted by the argument of counsel, it may not be improper to state in a general way the principle upon which it is founded, as well as to refer to some of the multitude of authorities in its support.

Judge COOLEY, in his work on Taxation (606), says that special assessments "are made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it."

"The *rationale* of the system," says Mr. Burroughs, "is that the purpose is a public one which justifies the levy of the tax, but the benefit of the improvement is not only local but also specific, benefiting particularized property, and

therefore the tax may be levied on this property, which receives a benefit over and above other property in the State. * * * An assessment for improvements is not considered as a burden, but as an equivalent or compensation for the enhanced value which the property derives from the improvement." The Law of Taxation, 460.

Judge DILLON (2 vol. Municipal Corp., 753n) quotes with entire approval the language of SLIDELL, C. J., in *Municipality No. 2 v. Dunn*, 10 La. Am., 57. The Chief Justice says: "I must repeat my conviction that the system of paying for local improvements wholly out of the general treasury is inequitable and will result in great extravagance, abuse and injustice. I think the system of making particular localities which are specially benefited bear a special portion of the burden, is safer and more just to the citizens at large by whose united contributions the city treasury is supplied. What is taken out of the treasury is out of the pockets of the proprietors."

Speaking of special assessments, the Supreme Court of Missouri, in *Lockwood* v. *St. Louis* (24 Mo., 20), said that "their intrinsic justice strikes everyone. If an improvement is to be made, the benefit of which is local, it is but just that the property benefited should bear the burden. While the few ought not to be taxed for the benefit of the whole, the whole ought not to be taxed for the few. * * * General taxation for a mere local purpose is unjust; it burdens those who are not benefited, and benefits those who are exempt from the burden."

These assessments are not to be confounded with the exercise of the right of eminent domain (Cooley Const. Lim., 498; 2 Dillon Munic. Corp., 738; Lewis on Eminent Domain), and it is also to be observed that while they are taxes in a general sense, in that the authority to levy them must be derived from the Legislature, they are nevertheless not to be considered as taxes falling within the restraints

imposed by Art. 5, § 3 of the Constitution, although the principle of uniformity governs both. *Shuford* v. *Commissioners*, 86 N. C., 562; *Cain* v. *Commissioners*, 86 N. C., 8; *Busbee* v. *Commissioners*, 93 N. C., 143; Cooley Const. Lim , 498; 2 Dillon Munic., Corp., 755, *et seq.*

The principle deducible from the foregoing quotations finds a striking illustration in the facts of the present case. The district improved by the pavement embraces only a part of one street, and while the improvement may add very greatly to the convenience and comfort of all of the citizens, it at the same time confers upon the abutting real property an enhanced pecuniary value out of all proportion to the benefits inuring to the public at large. Would it be just that all should be taxed alike, and that the owner of property in a remote part of the city be compelled to contribute as much towards the particular improvement as those whose lands are thus peculiarly benefited? This would savor very much of the "forced contributions" of the olden time, which are so generally denounced as obnoxious to the principles of free government, and the bare statement of the proposition shocks all sense of justice and furnishes its own refutation. It is, therefore, pre-eminently just, as well as the duty of the law-making power, to provide for an equitable adjustment of such burdens in proportion to the benefits conferred, and it is for the very purpose, as we have seen, of accomplishing this end, and of preventing so great a perversion of the taxing power that these local or special assessments are almost universally resorted to. It is true that the power to levy such assessments is sometimes abused, and that some of the methods adopted have been judicially condemned, but the existence of the power itself is as well established as it is possible by judicial decision to establish any legal principle whatever. *Wilmington* v. *Yopp*, 71 N. C., 76; *Cain* v. *Commissioners, supra; Busbee* v. *Commissioners, supra;* 2 Dillon Mun. Corp., 761; Cooley Const. Lim.,

506; 1 Hare Am. Const. Law, 301; Elliott on Roads and Streets, 370.

(2). We will now consider whether the power of the Legislature was properly exercised in the case before us.

It is a general rule everywhere conceded that the discretion of the Legislature in levying taxes, when exercised within constitutional limits, is conclusive, but in respect to special assessments the principle is questioned, and it is urged that these, not being strictly taxes, and not subject as such to the restraints imposed by the Constitution, but being founded solely, as some authors say, upon the principle of betterments of the property to the extent of the improvement, the Courts should not surrender the power to review an arbitrary decision of the Legislature, either as to the necessity for or the beneficial character of a particular improvement, or the manner in which the benefits are to be ascertained and assessed. That the judicial power has been successfully invoked in some instances will appear from the cases of *Sealy* v. *Pittsburg*, 82 Pa. St., 360; *Washington Avenue*, 69 Pa. St, 352, and other decisions cited in the notes to section 753 of volume 2 of Dillon on Municipal Corporations.

RUFFIN, J., in *Shuford* v. *Commissioners*, *supra*, says that such assessments "are committed to the unrestrained discretion of the law-making power of the State, only, as I take it, that the burden imposed on each citizen's property must be in proportion to the advantages it may derive therefrom." The latter part of the sentence very clearly implies the power of the Courts to interfere to some extent, and in this we very heartily concur, but it is not essential in this case that we should define and mark the limits of this power, and it is sufficient to say that, according to all of the authorities, the Legislature or its duly authorized instrumentalities are primarily, at least, the judges in respect to the particulars mentioned, and that their decision will not be disturbed unless it clearly appears that there is an absence of power, or that

the particular method prescribed for the assessment of the peculiar benefits to the abutting property is so plainly inequitable as to offend some constitutional principle.

The power to make such assessments must be clearly authorized by the Legislature, but it is not necessary, and "of course not to be expected, indeed, it is scarcely conceivable, that the Legislature should, in conferring authority upon local bodies, specify in minute detail the incidents of the power. The Courts generally hold that necessary incidental and subordinate powers pass with the grant of the principal power. Any other ruling would make it practically impossible to frame statutes capable of reasonable enforcement. In matters of street improvements and local assessments, as in kindred matters, it is generally held that a power clearly conferred in general words will carry all the incidental authority essential to the execution of the power in ordinary and appropriate methods." Roads and Streets, 374. It is urged that all of these subordinate incidents should be provided for in the act granting the power, because of section 4, article 8 of the Constitution, which requires the Legislature to provide for the organization, etc., of incorporated towns, etc., "and to restrict their power of taxation, assessment, borrowing money," etc.

Similar provisions have, upon the best authority, been held inapplicable to assessments of this character. They are construed, says Judge DILLON (Mun. Corp., 778), "not to apply to special assessments by municipal corporations made by authority of the Legislature for local improvements" The restrictions in such cases are to be found in those general principles of the Constitution which protect the liberty and property of every citizen. Even if such a provision did apply, it is not easy to understand how the duty to restrict the power requires that all of the incidents of its exercise shall be prescribed by the Legislature. Neither is it essential that the act of the Legislature, or an ordinance made under its

authority, should expressly state that the contemplated improvement is necessary (Roads and Streets, 385), nor is it required that the act should expressly declare that the assessments are to be made according to the benefits conferred. Both of these are implied from the very nature of this species of taxation, and that this is so is apparent from the action of the Court in upholding such assessments under acts which make no reference to such particulars. *Cain* v. *Commissioners, supra; Shuford* v. *Commissioners, supra; Busbee* v. *Commissioners, supra.*

Viewed in this light, we can see no objection to the ordinance under consideration. It very clearly provides for a taxing district, to-wit, "Fayetteville street, between Morgan and Martin streets," and it further provides that upon the failure of the abutting owners to comply with its requirements, the city may make the designated improvements at the cost of $1.20 per square yard. This provision, as to the cost (which is found by the Court to be reasonable), very plainly implies that the expense of the improvement in the entire district had been previously estimated, and thus we have an apportionment between the abutting owners and the city (the latter paying one-third), and also an apportionment as to the remaining two-thirds between the abutting proprietors according to the frontage. No objection is urged as to the apparently equitable adjustment between the city and the abutting owners, but it is insisted that the frontage rule is an improper method of ascertaining the benefits which enure to the respective lots, and that these should be estimated by the actual appraisement of each.

We have seen that such assessments are based upon the principle of benefits to the abutting property, but the manner of estimating such benefits is not confined to actual appraisement by appraisers appointed for that purpose. This would seem to be a very fair and equitable rule, but its practical working in some instances has led to injustice, and if

the Legislature, acting, as it is presumed to do, upon information as to the situation and character of the property, the depth of the lots, etc., chooses, in effect, to make an appraisement itself by the adoption of a standard like the frontage rule, it is not easy to undersand why in such cases the same measure of justice may not be attained.

In *Hamet* v. *Philadelphia*, 65 Pa. St., 155, it was said by Judge SHARSWOOD, delivering the opinion, that " perhaps no fairer rule can be adopted than the proportion of feet front, although there must be some inequalities of the lots differing in situation and depth. .Appraising their market values and fixing the proportions according to these, is a plan open to favoritism or corruption, and other objections " Even where the latter rule is adopted, the buildings should be excluded from the valuation " as the improvements (says Judge COOLEY) while increasing largely the market value of the land, do not usually perceptibly increase the value of the buildings erected upon it." Law of Taxation, 649. If the buildings are not be considered (and this is undoubtedly true), we can very readily conceive how the frontage rule may be quite as efficacious as any other in ascertaining the benefits—that is, the enhanced pecuniary value—where from the similarity in situation, etc., of the different lots, there can be no gross inequalities. The same eminent authority also states (638) that the two methods of assessing benefits between which a choice is usually made, is by assessors or commissioners appointed for that purpose, or by " an assessment by some definite standard fixed upon by the Legislature itself, and which is applied to the estates by a measurement of length, quantity or value." In speaking of assessments by the front foot, he says (644) that " such a measure of apportionment seems at first blush to be perfectly arbitrary and likely to operate in some cases with great injustice, but it cannot be denied that, in the case of some improvements, frontage is a very reasonable measure of benefits, much more than value

could be, and perhaps approaching equality as nearly as any other estimate of benefits made by the judgment of men. However this may be, the authorities are well united in the conclusion that frontage may be lawfully made the basis of apportment." Similar language is also used by the same author in his work on Constitutional Lim., 506, and cited with approval in *Yopp* v. *Wilmington, supra.*

In the well considered work on Roads and Streets, 396, by Elliott, it is said that "the system which leads to the least mischievous and unjust consequences is that which takes into account the entire line of the way improved, and apportions the expense according to the frontage; for it takes into consideration the benefit to each property owner that accrues from the improvement of the entire line of the way, and does not impose upon one lot owner an unjust portion of the burden."

The principle is also fully sustained by the following authorities, which are only a part of the large number that might be cited: Burroughs, Law of Taxation, 469; 2 Dillon Munic. Corp., 752, 761, 809; 2 Desty, Tax., 1263; *Pennock* v. *Hoover,* 5 Rawls, 291; *Magee* v. *Com.,* 46 Pa. St., 255; *Covington* v. *Boyle,* 6 Bush, 204; *State* v. *Elizabeth,* 30 N. J., 365 and 31 N. J., 547; *State* v. *Fuller,* 34 N. J., 227; *Wilder* v. *Cincinnati,* 26 Ohio St., 284; *Parker* v. *Challis,* 9 Kansas, 155; *Meenan* v. *Smith,* 50 Mo., 525; *Whiting* v. *Quackenbush,* 54 Cal., 306; *Palmer* v. *Stumpf,* 29 Ind., 329; *Allen* v. *Grew,* 44 Vt., 174; *Motz* v. *Detroit,* 18 Mich., 495; *King* v. *Portland,* 2 Oregon, 146; *Cleveland* v. *Tripp,* 13 R. I., 50; *White* v. *People,* 94 Ill., 604; *Sheley* v. *Detroit,* 45 Mich., 431.

Before proceeding further, we will examine the cases cited in support of the contrary view.

In the case of *State* v. *Jersey City,* 8 Vroom, 37 N. J. L., 130, the assessment was for grading, excavating and filling in the street, and the Court held that in such cases the same uniformity could not be had as in *paving.* The prin-

ciple of assessment by the frontage as to the flagging of side-walks was approved; and, at the same term, in _State_ v. _Passaic Village_, 68, it was declared that "there would be no injustice in assessing the improvement of opening, grading, guttering and curbing upon the entire frontage according-to the number of lineal feet. * * * There is no rule that condemns such method of assessment without proof of its injustice."

In _McBear_ v _Chambler_, 9 Heisk., 349, the "equality" clause of the Constitution was applied, which we have seen is contrary to the ruling of this Court and the overwhelming weight of authority in the other States.

In _Norfolk City_ v. _Ellis_, 26 Gratt., 224, the principle was approved; and while in _Woodbridge_ v. _Detroit_, 3 Mich., the Court was divided, in the later case of _Motz_ .v. _Detroit_, 18 Mich., it distinctly recognized the front-foot basis, if authorized by the Legislature.

The case of _Peay_ v. _Little Rock_, 32 Ark., decides against the rule, but the decision seems to have been influenced by Illinois' cases, which turned upon the peculiar provisions of the Constitution of that State, which Constitution, we learn, has since been changed in this respect, and recent decisions sustain the rule.

In _Williamsport_ v. _Beck_, 128 Pa. St., 147, the assessment was for re-paving, and the Court recognized the rule as to the cost of the original paving.

In _Clapp_ v. _Hartford_, 35 Conn , 96, the charter was not complied with, and the cases cited from Missouri do not controvert the rule, but simply construe it as it should be applied under certain statutes referred to.

Thus it appears that even the industry of the intelligent counsel has failed to produce any authority where the general principle was fairly presented and condemned, while nearly, if not indeed all of the cases cited by them tend very strongly to its support.

It is insisted, however, with much earnestness, that, conceding that the ordinance prescribes a valid method of apportionment, still it ·cannot be sustained unless the power to make it is conferred by the Legislature, and that such power has not been conferred upon the city of Raleigh. This position is founded upon the idea that the charter does not create or authorize the creation of a taxing district, but simply charges the abutting owner with the whole cost of the improvement in front of his lot, and that there being an absence of authority to make any apportionment according to benefits, the ordinance is void. The imposition of such a charge has been condemned by some authorities and sustained by others. Without pausing to determine how this may be, and conceding for the purposes of the discussion that the charter bears the construction insisted upon, and that such an assessment is for that reason invalid, we are, nevertheless, of the opinion that the ordinance is fully supported by legislative sanction. In chapter 62, section 3803 of *The Code*, (Towns and Cities), it is provided that the Commissioners or Aldermen "may cause such improvements in the town to be made as may be necessary, and apportion the same equally among the inhabitants by assessments of labor or otherwise." Here we have a very comprehensive power granted the Commissioners or Aldermen for the improvement of streets, and the authority to *apportion* the cost of the improvement is not only implied by the power to make "assessments" (Anderson Law Dict., Bouvier Law Dict. Assess.), but is expressly conferred.

Now if it be granted (as we think it should be) that the general act is deficient, in that it does not provide for the enforcement of such assessments against abutting real property, still it is good as far as it goes, and is not repealed by the charter as amended, unless inconsistent therewith. *The Code*, § 3827. If it be said that the charter conflicts as to that part which requires the whole cost to be charged against the

abutting property without any apportionment, and if, as contended, such a provision is void, it would be impotent to work a repeal of that part of the general act which does authorize such apportionment. If it does not conflict, then of course the general act may supplement the special act, and the two may be construed in *pari materia.* So, taking it either way, the authority to apportion the cost according to benefits, as provided in the ordinance, would be supported, and the power to collect the assessments being expressly granted, and the manner of collection prescribed, it must follow that, in the total absence of anything to show an abuse of power or any gross inequalities, the assessment in question may be enforced

We are of the opinion, however, that no personal judgment can be rendered against the abutting owner, and that so much of the amendment to the charter which provides for such a judgment is invalid. It is true that in *Yopp* v. *Wilmington, supra,* such a judgment was rendered, but the point was not presented and passed upon by this Court, the only question decided being the validity of special assessments of this character, and not the manner of their enforcement. We feel at liberty therefore to examine into the constitutionality of the act authorizing the judgment in question, and in doing so we cannot better express our views than by quoting the language of Mr. Elliott: "It is not easy to perceive how the assessment can extend beyond the property against which it is directed, since the sole foundation of the right to direct and enforce the assessment rests upon the theory that the land receives a benefit equal to the assessment. If the land, with the superadded value given to it by the improvement, will not pay the assessment, there is no constitutional warrant for the right to seek payment of the assessment elsewhere; for the land is all that the improvement can by any possibility benefit, and land (or other property) that is not benefited, cannot be seized without violating the principle which forbids the taking of property with-

out compensation, nor without breaking down the only theory upon which it is possible to sustain local assessments, and yet if there is a personal liability, the assessment may be enforced although the land, even as enhanced in value by the improvement, may not be worth a tithe of. the extent of making the improvement. *· * * The decisions which declare statutes imposing a personal liability upon the land owner unconstitutional, are, in our judgment, so strongly entrenched in principle that they cannot be shaken." Roads and Streets, 400. Such also, is the opinion of Judge COOLEY (Taxation, 675) who says that " in such a case if the owner can have his land taken from him for a supposed benefit to the land, which, if the land is sold for the tax, it is thus conclusively shown he has not received, and he then held liable for a deficiency in the assessment, the injustice—not to say the tyranny, is manifest. But such a case is liable to occur if assessments are made a personal charge; and cases like it in principle. though less extreme in the injury they inflict, are certain to occur."

The foregoing reasons are entirely conclusive to our minds, and are well sustained by authority. *Higgins* v. *Ansmus*, 77 Mo., 351; *Neenan* v. *Smith*, 50 Mo., 525; *Macon* v. *Patty*, 57 Miss., 378; *Cran* v. *Tolono*, 96 Ill., 255; *Jaffery* v. *Gough*, 36 Cal., 104; *Broadway* v. *McAtee*, 8 Bush., 508; *Burlington* v. *Quick*, 47 Iowa, 226; *Green* v. *Ward*, 82 Va., 324.

The act provides that the judgment of the Justice of the Peace may be docketed in the Superior Court, "and shall have the same lien as is possessed by other judgments docketed in said Superior Court, and be enforced in like manner." The judgment authorized being a personal one, we know of no principle by which it can be so modified and shaped in a Justice's court (which has no equitable jurisdiction) as to make it a charge against the abutting land only. It is to be observed, however, that another method of collection is provided by the amendment to the charter. It provides that the

assessment may be " added to the taxes against him or her, and collected in the same manner that other taxes or *assessments* are collected." We can see no reason why this assessment may not be enforced against the abutting land under this provision of the said amendatory act.

We are therefore of the opinion with his Honor that the assessment is valid, but we do not think it can be enforced by a personal judgment against the defendant. For this latter reason we conclude that the judgment should be reversed.

MERRIMON, C. J. (dissenting): I concur in the judgment but not in the opinion of the Court, and will state some of the grounds of my dissent.

The Constitution (Art. 8, § 4) provides, that " it shall be the duty of the Legislature to provide for the organization of cities, towns and incorporated villages, and to *restrict* their powers of taxation, *assessment*, borrowing money, contracting debts and loaning their credit, so as to prevent *abuses in assessments* and in contracting debts by such municipal corporations." This highly mandatory provision is significant and very important. Its leading purpose is to specially require the Legislature to provide for the organization of cities and towns and to restrict, restrain, keep within prescribed limits the great powers of taxation, assessment, borrowing money, contracting debts and loaning their credit, conferred upon them, and thus prevent oppressive taxation, burdensome city debts, arbitrary assessments, wild schemes of extravagance and other like abuses. The purpose expressly declared is, " to *prevent abuses in assessments and in contracting debts*," by cities and towns. Long continued public experience in every direction pointed, and still points, to the great necessity for this organic provision, its wisdom and the importance of a strict observance of it. The legislative duty is expressed in clear, explicit and imperative terms. Cities and

towns must not be left to exercise unrestricted and arbitrary power of taxation and assessment. On the contrary, such powers must be restricted and defined by statutory authority, else they cannot be exercised at all. The Legislature has no authority to confer upon cities and towns unlimited power to impose taxes or to make assessments. The statute purporting to confer such power would be inoperative and void, because in contravention of the letter and purpose of the Constitution. The power of assessment, in its most general sense, is very broad, indefinite and arbitrary in its nature and application. It may be made a terrible engine of injustice and oppression, as long experience has shown. It is the more dangerous, and therefore to be the more guarded against, because the law and the decisions of the Courts in respect to it are unsettled, the latter being greatly in conflict. Oftentimes the party complaining against oppression and grievous wrong growing out of it, has found no adequate remedy. The purpose of the provision just recited is to prevent such evils. The Legislature is specially required to restrict, limit and define such power when conferred upon cities and towns in this State. A statute purporting to confer the general power of assessment is void, because not allowed or tolerated by the Constitution. A statute conferring such power should and must prescribe the extent and the method of the exercise of the same. Towns and cities cannot be allowed to exercise and apply it at their will and pleasure, nor arbitrarily. Statutory regulation must exist to prevent this evil. Surely so important a constitutional provision should have effect, and the Courts should enforce it in appropriate cases.

Now it seems to me clear and palpable that the statutory provision under which the plaintiff city undertook to make and enforce its *ordinance* in question is violative of the constitutional provision above recited, in that it purports and intends to confer upon the plaintiff the unrestricted arbitrary power of assessment, and goes beyond that, in requir-

110 — 4

ing assessments to be made, not simply against the property supposed to be specially benefited by the street improved, but as well against all the property, both real and personal, of the owner thereof and against him personally, thus empowering the plaintiff, in effect, to take the property of the citizen for public uses without compensation. These are the very grievous evils intended to be suppressed and prevented. The organic provision recited means this, or it practically means nothing.

In substance and effect the statute in question purports to confer upon the plaintiff unrestricted authority to require every owner of real estate situate in it "to pave one-third of the street or streets in front of his or her land," as it may require, and if such owner fails to do so, then it may make such pavement and assess and charge " upon the property of such delinquent" the costs of such paving, to be "added to the taxes against him or her and collected in the same manner that other taxes or assessments are collected," or the plaintiff may sue the delinquent for such costs, obtain judgment therefor, docket the same and thus obtain a judgment lien and enforce it by a sale of the delinquent's property as in ordinary cases.

It seems that it was not the purpose of this statutory provision to confer upon the plaintiff power to impose a tax on the property of owners of real estate situate within it as prescribed for the purpose of paving the streets. But if such were its purpose it would be void, because in that case it would be violative of the Constitution (Art. 5, § 3; Art. 7, § 9), which requires that the levy of all taxes, whether for the purposes of the State, counties, townships, cities or towns, " shall be *uniform and ad valorem* upon all property in the same, except property exempted by" the Constitution. Plainly the costs of paving the streets in the case provided for, is not upon the *ad valorem* value of the taxpayer's property. Moreover, such levy is not general or *uniform*—it is confined to a

class of taxpayers who own real estate situate within the town. The Constitution contemplates and intends that all taxes imposed upon property shall be *uniform* and *ad valorem* upon the property of all persons liable to pay tax, and not upon a part of them, or upon a class or classes owning particular kinds of property subject to taxation.

It is, however, seriously insisted that the real purpose of the statutory provision is to confer upon the plaintiff power to pave the street in the case specified, and assess the real property in front of which the paving was done, and which received special benefit from it, with the costs of such paving. If such purpose was intended, it is·not expressed by the statute, nor is there any appropriate provision for effectuating it.

Assessments are commonly called a species of taxes, but they are not so properly denominated, certainly not in this State. The Constitution provides and establishes with much precision a system of taxation for all public purposes, and how the legislative power in that respect shall be exercised, but that system does not in terms, or by implication, embrace or refer to the power of assessment. This power is distinct from that of taxation, and is not limited by constitutional restraint otherwise than as above indicated. The word *assessment* as employed in the Constitution, has reference to what are commonly designated as *local assessments*, generally of money, for the purposes of some local improvement, and " are imposed only upon those owners of property who in respect to such ownership are to derive a special benefit in the local improvements for which they are expended, and are not within the restraints put upon general taxation." *Cain* v. *Commissioners*, 86 N. C., 8. The power and rights to make such assessments are founded upon the benefits, or supposed benefits, such property derives specially from the public improvements, beyond the benefit derived generally·by the community. Government has authority to compel every-

one whose property derives.special benefit from local public improvements to pay, in addition to his ordinary taxes, charges, assessments, expended in making such improvements, equal to such special benefits. That power is not unreasonable or unjust. Every citizen should pay his proportion of taxes as the money price for the benefits he derives from government in the protection of his life, liberty and property, and general advantages incident thereto, and when his property derives special benefits not common to the whole community from local public improvements, he should pay for the same to the extent of, but not beyond, such special benefits. In such case the owner of the property cannot reasonably or justly complain, because his property has been so benefited. It may happen in possible cases that the assessment is too great, or in some aspects of it not strictly just; but this is not attributable to the law or its purpose, but to its erroneous or imperfect administration in particular cases. But such power is great, indefinite, not precisely defined in its nature and limits, and hence subject to very great abuses. It is therefore that the organic provision requires this power to be restricted and carefully guarded.

No assessment should exceed the special benefit to the land deriving the same, and all methods of assessments that work a different result are defective and objectionable. To the extent that it exceeds such benefit, the owner's property is, in effect, taken for the benefit of the public without compensation, and to that extent it is violative of fundamental right. Hence, a statute whose terms and effect produce such a result would be void. It is intended in this State that the statute granting such power shall guard against such oppression and injustice by appropriate restrictions.

The assessment, in its nature, must be made against the property so specially benefited, and not against other property of the owner, or him personally, because the assessment is founded solely upon such benefit to the property particu-

larly benefited. That property, and that alone, must be assessed. The owner may pay the assessment and thus relieve his land from the charge, but if for any reason he will not, then the land may be sold to satisfy the same, but no other part of the delinquent's property may be sold for such purpose, nor in that case would he be chargeable personally or otherwise on that account. This must be so because the land so benefited, and none other, may be charged with the assessment. Can it be that the public may benefit and assess a particular lot of land and afterwards sell it, and part or all of the owner's other property, to satisfy the assessment, and still perhaps have a charge against him personally for an unpaid balance of the same? A proposition so arbitrary, unreasonable and oppressive shocks every sense of right and justice. A statute that purports to authorize the property of the owner of the land so assessed, other than that land, to be sold by legal process to satisfy such assessment, is inoperative and void, because it, in effect, undertakes to allow the arbitrary appropriation of the owner's property to the use and purposes of the public without compensation to the owner thereof. The statute cannot authorize the sale of property other than that so specially benefited. That property alone is subject to be assessed. *Neenan* v. *Smith,* 50 Mo., 525; *Taylor* v. *Palmer,* 31 Cal., 240; Cooley on Taxation, 472.

An essential element of such assessments is that they must rest upon the principle of uniformity as to all property subject to and affected by them, and especially they should be so regulated in respect to making them as to charge the property of each owner benefited by the same public improvement in proportion as such property is so benefited, and as to the costs and character of the same. They must, in their nature, affect all property subject to them alike in all material respects, and a statute authorizing them to be made should so require by proper regulations and restrictions. *Busbee* v. *Commissioners,* 93 N. C , 143. The Legislature has

no power to allow arbitrary assessments to be made, or to grant power that may be so exercised. As we have seen, it is expressly made its duty to *restrict the power of assessment* conferred upon cities and towns, "so as to prevent *abuses in assessments.*" It may not leave such corporations at large to make assessments as they will. A statute so providing is inoperative and void, because it fails to provide appropriate and reasonable restrictions as the Constitution requires in express and mandatory terms and such is its clear purpose.

The statute under which the plaintiff claims to exercise authority to make the assessment in question, in broad terms undertakes to confer upon it general power to pave one-third of any one or all of its streets in front of a lot of land abutting upon the same, and to assess the cost of the paving against the property of the owner thereof. It is not required to observe uniformity in any respect in making such assessments. They may be made without any reference to the special benefit the paved street may extend to the lot on account of which they are made, and without reference to the cost of the paving done. The assessment as to one lot deriving small benefit, may be a sum of money equal to two or three times the value of such benefits, while the assessment as to another lot, deriving much greater benefit, may be greatly less than the former. The cost of the pavement in front of one lot may be double or treble that in front of another, and the assessment as to both may be precisely the same. The plaintiff is not restrained in these or any respect; no restraining regulations are prescribed for its government therein to be observed by it. The whole unrestricted power of assessment is sought to be conferred. It may make assessments at its will. This the Constitution does not allow or sanction.

The *ordinance* of the plaintiff in question well illustrates the truth, force and importance of what has just been pointed out. It is in large measure purely arbitrary. It requires

the assessment to be made without regard to the special benefit the paved street extends to the lot on account of which it is made, and without reference to the real cost of the paving done. It requires uniformity only in a single respect, that of the cost of paving a square yard, and this is based upon mere estimate and is wholly arbitrary; it might just as well have been fixed at a greater or less sum, so far as the particular property assessed is concerned. If the cost of paving a square yard in front of a lot is less than that specified, the assessment is the same as if it had cost that or double that sum, and the cost is the same whether the pavement is of greater or less or no special benefit to the lot.

The statute does not require the assessment to be made against the lot benefited, as it should do, in any case; it directs that it be made " upon the property of such delinquent (the owner of the property who failed to pay the sum of money demanded for the paving), and added to the taxes against him or her." This language is plain and broad. It cannot be said that it should and may be construed as directing the assessment to be made against the property—the lot benefited specially. The plain terms do not so imply, nor was it so intended, as plainly appears from the further provision that the assessment shall be " collected in the same manner that other taxes and assessments are collected." This implies that any of the delinquent's property may be sold to satisfy it. As we have seen, the assessment must be made against the particular property benefited, and if the owner will not pay the sum charged, then that property, and no other, may be sold to satisfy it.

The statute further prescribes that the plaintiff may sue and obtain judgment against the delinquent owner of the property assessed, docket the same and sell any of his property to satisfy it. The reasons why this cannot be done have already been pointed out. Such directions of the statute in effect provide for taking indirectly the delinquent's property

for the use of the public without compensation to him. It allows property not liable for such assessment to be sold to satisfy the same. It thus practically confiscates the delinquent's property to the use of the public."

Nor does the general statutory provision (*The Code*, § 3803) in respect to towns and cities, confer upon the plaintiff power to make such assessments as that here in question, even if it were applicable. It prescribes that the commissioners of towns and cities " may cause such improvements in the town to be made as may be necessary, and may apportion the same equally among the inhabitants by assessment of labor or otherwise." The power thus vaguely sought to be conferred as to assessments like that in question here, is quite as objectionable as the power intended to be conferred by the clause of the plaintiff's charter in question. It intends to confer the vague power of assessment without restriction, restraint or direction of any kind or in any respect; it leaves the plaintiff to make assessments as it will; it may arbitrarily assess by the front foot, the square yard, the actual cost, by or without reference to a uniform rule, with or without reference to the benefit of the property charged; it may make a general charge for the whole paving done, and charge each owner of land his or her proportion of the whole cost. This statute does not make the assessment a lien upon the property assessed, nor does it prescribe how the property may be sold to satisfy the assessment. Any proceeding to sell it, unless by a decree of a Court, will be arbitrary and unauthorized. The very purpose of the constitutional provision is to prevent the exercise of such unbridled power, and save the property owner from unjust discrimination and oppression for which he can have no remedy. It is not sufficient to say that this plaintiff will not unjustly or unreasonably exercise such power. It may do so, other cities and towns may do so, no doubt have done so to a greater or less extent. The Constitution wisely does not intend that

they shall have, be charged with or exercise such great power without restraint or limitation of any kind.   It commands the Legislature to restrict such  power.   It seems to me that if its provision to which I have referred has not the meaning and purpose I have attributed  to it, then it has no practical meaning and is a dead letter, serving no purpose.

In my view this case depends upon the proper interpretation of the constitutional provision I have cited and commented upon, and not upon a vast multiplicity of conflicting and confusing decisions of Courts out of this State in respect to the general power of assessment.   An important part of the purpose of the Constitution is to rid the people of this State of uncertainty and confusion in respect to the power of assessment, and the serious evils incident thereto.

In my judgment, the statute in question fails to restrict and regulate the power of assessment it purports to confer upon the plaintiff, as required by the constitution, and hence, it had no power to make or enforce its *ordinance* in question.

DAVIS, J.: I concur in the above opinion of the Chief Justice.

*Per curiam.*                         Judgment reversed.