CITY OF GREENSBORO v. W. D. McADOO.

*Petition to Rehear—Dismissal of Appeal for Want of Assignment of Error—Assessment by City for Special Benefits to Abutting Property—Statute, repeal of.*

1. An appeal from an adjudication upon an agreed state of facts is a sufficient assignment of error by the party against whom the ruling is made.

2. The power to levy assessments upon owners of property for special and peculiar benefits accruing to the same from improvements is not inherent in a public corporation, but must be directly conferred by statute.

3. Where a statute conferring authority on a municipal corporation to make assessments on property for special benefits prescribes the mode in which that power shall be exercised, that mode must be strictly pursued, except as to entirely immaterial matters.

4. Repeals of statutes by implication are not favored, and in order to give an act, not covering the entire ground of an earlier one nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing an irreconcilable repugnancy between its provisions and those of the earlier law; therefore, where the charter of the city of Greensboro (Private Laws, 1869-'70, ch. 122, as amended by ch. 13, Acts of 1875), relating to the construction and repair of sidewalks and the assessment upon owners of abutting property for the special benefits thereto, required that such benefits should be ascertained by a committee of five freeholders chosen jointly by the commissioners and the property owner, and an amendment to the charter was made by ch. 44, Acts of 1887, which authorized the commissioners generally to grade and lay out streets, make *local assessments*, etc., but provided no method of making the assessment: *Held*, that the latter enactment did not, by implication, repeal the particular method prescribed by the former law of making assessments as to sidewalks.

5. Inasmuch as ch. 219, Acts of 1889, creating a new charter for the city of Greensboro, provides no method of levying special assessments of any character, either for past or future improvements, it seems that, as to the latter, they must be made under the general law (*The Code*, ¿3803); but as the new charter, after declaring that all existing laws

in conflict with it are repealed, provides that such repeal shall not "affect any act done or right accruing or accrued or established, but the same shall remain in full force, and be preserved and enforced and enjoyed," etc., the act does not operate to repeal the old mode of assessment for improvements commenced before the new charter took effect, though not assessed for until afterwards.

PETITION, by defendant, to rehear the appeal dismissed at February Term, 1892, for lack of specific assignment of error in the ruling of the Judge below, as reported in 110 N. C., 430.

The cause was heard below before *Boykin, J.,* at February Term, 1891, of GUILFORD Superior Court, on appeal from the Board of City Aldermen of Greensboro, upon a case agreed and facts found by his Honor. There was judgment for the plaintiffs, and defendant appealed.

The facts are sufficiently set out in the opinion of Chief Justice SHEPHERD.

*Messrs. L. M. Scott* and *J. T. Morehead,* for petitioner.
*Messrs. Dillard & King* and *James E. Boyd, contra.*

SHEPHERD, C. J.: Upon a more careful examination of the record we are of the opinion that the appeal in this case should not have been dismissed for want of sufficient assignment of error to the adjudication of the Court below. The cases cited in support of the dismissal are not in point (110 N. C., 430), as in neither of them was the judgment predicated, as in this case, upon a statement of facts agreed.

In *Chamblee* v. *Baker,* 95 N. C., 98, the Court said : "The case is made out in the facts agreed and submitted, and the appeal from the adjudication upon them is a sufficient assignment of error. It does not, in this repect, differ from a ruling upon a demurrer to the complaint, when no separate case is required. In each case the question is as to

the plaintiff's right of action and recovery upon the facts agreed."

In *Davenport* v. *Leary*, 95 N. C., 203, the Court remarked: "An error is sufficiently assigned in an appeal from the ruling as to the law upon an agreed state of facts by the party against whom the ruling is made. What greater particularity can be required? The issue is joined by the adverse contentions as to the law arising upon the facts, and an appeal from an adverse decision distinctly presents it for reviewal."

The practice as thus indicated was followed in *Raleigh* v. *Peace*, 110 N. C., 32, which was tried upon a statement of facts agreed, and in which there was no specific assignment of error.

The appeal, then, being properly before us, we will now proceed to a consideration of the questions presented by the record and elaborately argued by counsel.

In the case of *Raleigh* v. *Peace, supra,* we had occasion to examine, at some length, into the principle upon which taxation in the form of local or special assessments is founded, the source from which the authority is derived, the manner in which it may be exercised and other matters relating to the subject, It will be sufficient, therefore, in the present discussion to state briefly that assessments of this character "are made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it." Cooley on Taxation, 416.

Such assessments are quite distinct from the general burdens imposed for State and municipal purposes, and are

governed by principles that do not apply generally. The power to levy them is not inherent in any public corporation, but must be directly conferred by statute. Elliott on Road and Streets, 370.

"There must," says Judge COOLEY, "be special authority of law for imposing them" (Law of Taxation, 418; *Raleigh* v. *Peace, supra*), and this distinguished jurist, together with Dillon, Desty, Burroughs and other authors, fully sustains Mr. Elliott in the following propositions, which we extract from his excellent work on Roads and Streets, 371: "The power is purely a derivative one, and it is not only fettered by all the limitations contained in the statute which delegates it, but it has no existence beyond the scope which a strict construction will yield. It is, therefore, always essential that one who bases a claim upon a local assessment shall show the foundation for his claim to be a valid statute, and that upon a strict construction of that statute against him his claim is within the authority which the statute confers. There is no elasticity in such statutes, and it is beyond the power of the courts to so stretch them as to make them cover cases not fully and clearly within their scope."

"The rule, however," remarks the same author (*supra*, 374), "does not so limit the authority as to exclude the necessary incidents of the principal power, provided that such power is clearly conferred." *Raleigh* v. *Peace, supra.*

Another principle equally well established is that where the statute from which the authority is derived prescribes the mode in which it shall be exercised that mode must, except as to entirely immaterial matters, be strictly pursued. "A departure from any statutory provision should, as a general rule, be considered as sufficient to destroy the order in all cases where an attack is directly and seasonably made, and the case is not affected by any question of waiver or estoppel." Roads and Streets, 371; 2 Dillon Mun. Corp.,

769, note; 2 Desty Taxation, 1241; Cooley Taxation, 418.

In the case under consideration the power to order the improvement of the sidewalks and to levy assessments against the abutting owners to the extent of the special benefits conferred is not denied; but it is insisted that there was, as applicable to the present assessment, a specific method prescribed by the plaintiff's charter, and that as this method was not pursued in several material particulars, and as objection was taken in apt time, the assessment is invalid and cannot be enforced in this action.

The improvements were ordered by the city in August, 1888, and the work was completed in June, 1889. In the charter of the city, granted in 1870 (Private Laws 1869–'70, ch. 122), there is no specific provision authorizing the levying of special assessments, but in respect to the improvement of sidewalks it was amended by the Act of 1875, ch. 13, section 1, which provides as follows: "The owner or owners of property in front of which the Commissioners shall construct, pave or repair any sidewalks shall be chargeable and pay for any special benefit accruing to such property by reason of said improvement, and such property shall be bound for the value of such special benefit, to be ascertained in the same manner as herein prescribed for laying off streets, including the right of appeal." In section 58 of the charter it is provided "that when any land or right of way is required by said city of Greensboro for the purpose of opening new streets or for other objects allowed by its charter, and for want of agreement as to the value thereof the same cannot be purchased, * * * the same may be taken at a valuation to be made by five freeholders of the city, to be chosen jointly by the Commissioners and the party owning the land, * * * and in making said valuation said freeholders after being duly sworn * * * shall take into consideration the loss or

damage which may accrue to the owner or owners in conse-
quence of the land or right of way being surrendered, and also
any special benefit or advantage such owner may receive,"
etc.    Thus it appears from the foregoing acts that a par-
ticular method was prescribed, under which the owner was
entitled to have the special benefits assessed by *five freehold-*
*ers* to be chosen *jointly* by himself and the Commissioners.
It does not appear from the record that the persons who
made the present assessment were freeholders, and under
the principle of construction to which we have referred it
was clearly the duty of the plaintiff in a proceeding like
this, where the validity of the assessment was directly
attacked, to have established affirmatively the existence of
so important a prerequisite.    "In an assessment for a local
improvement every act required to be done must be done
or the assessment will be void, and the *onus* of proving such
performance is on the party claiming the assessment to be
valid."    2 Desty Taxation, 1241 ; *Nichols* v. *Bridgeport*, 23
Conn., 189.

Neither does it appear that the defendant had any voice
in the apointment of the Commissioners.    On the contrary,
the record discloses that he had no notice of such appoint-
ment, and that it was the act of the city alone.    As there
is nothing which can reasonably be construed into a waiver
of these particulars by the defendant, it must follow that,
if the provisions of the charter as amended by the Act of
1875 are applicable, the assessment is invalid and cannot be
sustained.

It is contended by the plaintiff that the above provisions
were repealed by the act of 1887, ch. 44, and that a general
power to make assessments was conferred by the said act which
prescribes no method of levying the same, but left this to
be supplied by the city under its implied authority to do
everything incidental to the exercise of the principal power.

It has been truthfully remarked that this power of making special assessments is at best a dangerous one to entrust to municipalities, and the courts will be slow, in the absence of a purpose clearly manifested on the part of the Legislature, to construe a general power of this character (laconically expressed "to make local assessments," section 7) into a repeal of certain existing safeguards with which the law has carefully invested the citizen, in reference to an assessment of a particular character. "Power is ever aggressive, and, under one specious pretext and another, perpetually struggling to strengthen its position and enlarge its sphere, and succeeds to a greater or less degree, even when surrounded by the most watchful and jealous vigilance; but when not so surrounded its strides become fearful and detrimental to the rights and interests of the citizen."

The Act of 1887 provides, among other things, for the issuing of bonds for the improvement of the city, and further provides "that the Board of Commissioners of the city of Greensboro is hereby authorized and empowered to erect suitable graded school buildings in such part of the city as they may select; to grade and lay out streets, to make local assessments, to provide water supplies for the city," etc.

It must be observed that prior to this act the city, under its charter had no power to levy assessments of any character, except in the case of sidewalks, and as to these, it had prescribed a remedy. When the Legislature extended its power to make assessments in respect to other improvements, such as grading the city and laying out streets, and failed to prescribe the mode in which the power was to be exercised, it did not have the effect of working a repeal of the existing method of assessing benefits as to sidewalks. Indeed it is by no means certain that the act relates to sidewalks at all, as it does not mention them,

although it enumerates several other subjects of improvement. However this may be, the act does not cover the entire subject-matter of the old law in reference to sidewalks, and, as it is entirely consistent with it, the latter is not repealed by implication. Endlich on Interpretation of Statutes, 195–228. The same author (section 210) says that repeals by implication are not favored and " that in order to give an act, not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law so positive as to be irreconcilable to any fair, strict or liberal construction of it, which would, without destroying its intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law and construing both together in harmony with the whole course of legislation upon the subject."

Tested by these principles, it is entirely clear that there was no repeal of the particular method of assessment as to side-walks. Such was the law at the time of the completion of the improvements and up to the enactment of the new charter, which went into effect on July 1, 1889. Under this, the former law, the defendant, as we have stated, had the ·privilege of having the special benefits assessed by *freeholders to be jointly chosen* by himself and the plaintiff.

The assessment not having been made until after the passage of the Act of 1889, it would have been competent for the Legislature to have therein prescribed a different method of assessment, provided that no substantial right would have been affected. So far from doing this, it seems to.have failed to provide for the levying of special assessments of any character, either for past or future improvements, and as to the latter it appears that they must be made under the

general law. *The Code*, §3803; *Raleigh* v. *Peace, supra.* The act (section 60) simply authorizes the city "to grade, macadamize and pave the sidewalks, and to lay out, change and open new streets," etc. This does not authorize a special assessment under the charter, as we have seen that this extraordinary power must be granted expressly by the Legislature. The case of *Smith* v. *Newbern*, 70 N. C., 14, is not in point, as it did not relate to assessments of this character, but only involved the power of the city to contract for the building of a market-house, the same to be paid for in money raised by ordinary taxation. We do, however, find a provision as to the improvement of sidewalks, but this does not relate to an assessment, but is a provision under the police power, which authorizes the city, in the event of the failure of the owner after twenty days' notice to pave his sidewalk, to have the work done at the sole expense of the owner, the same to be a lien upon the property. It can hardly be contended, therefore, that the assessment in question was made according to any method prescribed in the new charter, as none is therein provided; nor can it be sustained under the provision as to the improvement of sidewalks, as we have seen that this has nothing to do with an assessment. Even if it could be considered as such, it could not avail the plaintiff, as the defendant was not required to pave his sidewalk, and the city could only do so upon his failure to comply upon notice.

In passing, in order to avoid confusion, we will add that in *Raleigh* v. *Peace, supra,* the improvements were made to the streets and not to the sidewalks, and the case turned upon the validity of the assessment.

We have discussed the provisions of this last act (Act of 1889) for the purpose of showing that they do not conflict in any manner with the method of assessment prescribed

by the previous law under which the improvements were ordered and completed. We are unable to see how a subsequent statute which prescribes no remedy whatever can, in the absence of a clearly expressed intention to do so, have the effect of repealing a particular remedy prescribed by a former statute. As we have said, it is competent for the Legislature in all cases to change the remedy to a qualified extent, but in this instance it has not attempted to do so either by express provision or impliedly by the substitution of a new one. Statutes may be repealed either by implication or by express enactment. We have seen that upon no principle was there a repeal of the prior statute by implication.

Was it repealed by the express provisions of the new charter?

There is no provision in respect to past improvements and therefore no distinction as to them is made between the right and the remedy. It was, it seems, so far as the city is concerned, competent for the Legislature to have taken away its "imperfect right" to have any assessment whatever, and we are unable to discover from the language used any reason for holding that the remedy was destroyed which does not equally apply to the annihilation of the right itself. It is "a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." Cooley Const. Lim., 455. Such an intention should be "expressed by clear and positive command, or be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt." Endlich, supra, 271.

In view of these principles we think it but just, both to the city as well as to the defendant, that the new charter, even if it conflicted with the old, should be construed as prospective only in its operation. This conclusion is amply sustained by the saving clause of the new charter.

After declaring that said act shall thenceforth be the charter of the city and that existing laws in conflict with the same are repealed, it provides that such repeal shall not " affect any act done or right accruing or accrued or established, * * * but the same shall remain in full force and be preserved and enforced and enjoyed," etc. This expressly applies to the right " accruing " or which had " accrued " to the city to have the special benefits assessed. While, as we have remarked, it may have been competent for the Legislature to destroy this right (not being a vested one), it was careful not to do so, and we are very sure that if the right were now impeached by the defendant, this very provision would if necessary be relied upon for its protection. If the right continued, why did not the specific remedy continue also? As we have seen, there is no express repeal of the remedy, nor is there any repeal by implication, as no new remedy is prescribed. If it were otherwise, the city could not under its present charter make any assessment; as we have before stated, no power to assess in any case is therein granted. If, then, the right is preserved, it is fair to presume that the Legislature intended that the specific existing remedy should also remain in effect. To sanction a resort to implied powers or to the undefined methods of the general law when a specific remedy is prescribed, would be establishing a dangerous precedent, and one which would destroy all limitations upon the exercise of municipal authority and be productive of incalculable evil.

24—Vol. 112

These considerations induce us to believe that in so far as it affects the method of assessment in this case the new charter should be regarded as prospective only.

We are therefore of the opinion that the assessment now sought to be enforced cannot be sustained. The defects, however, are not of a jurisdictional nature, and the order declaring that the improvements should be made and the abutting owners assessed to the extent of the special benefits conferred is not therefore void. The city may now proceed to make an assessment according to the prescribed method. "Re-assessment," say sMr. Desty, "is proper after a judicial decision against the first proceeding, if based upon errors and defects merely"; and in this he is sustained by abundant authority. Cooley Taxation, 233.

For the reasons given the judgment must be reversed.

Petition Allowed.